MICHAEL P. GRAHAM *et al.*, Petitioners-Appellants, v. STATE OFFICERS ELECTORAL BOARD *et al.*, Respondents-Appellees.

Fourth District   No. 4—94—0775

Opinion filed February 23, 1995.

Deanna Seward Mool, of Mool & Seward, of Springfield, for appellants.

Michael Kasper and Michael H. Pendola, both of Madigan & Getzendanner, of Chicago, for appellee Jim Anderson.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jon E. McPhee and Nuviah Shirazi, Assistant Attorneys General, of Springfield, of counsel), for other appellees.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Petitioners filed objections to the nomination of respondent, Jim Anderson (Anderson), as a candidate for the office of representative in the General Assembly for the 104th Representative District of Illinois. After hearing, the respondent, State Officers Electoral Board (Board), overruled the objections. Petitioners sought review and the circuit court affirmed the decision of the Board. Because of the

impending certification of the ballot by the State Board of Elections on September 2, 1994, an emergency appeal was filed by petitioners on August 31, 1994. A panel of this court, after reviewing the parties' trial briefs and the record, entered an order on September 1, 1994, reversing the judgments of the circuit court and the Board and directed that Anderson's name not be certified on the ballot for the 1994 general election. The order indicated a written disposition would follow.

Before that disposition was filed, however, on September 14, 1994, the Supreme Court of Illinois granted petitioner's request for expedited consideration, allowed his petition for leave to appeal, and reversed the judgment of this court. Anderson's name later appeared on the ballot, but he was defeated in the general election. Thereafter, on December 28, 1994, the supreme court, on its own motion, vacated its September 14, 1994, order and dismissed the cause on the basis the appeal had been improvidently granted. The court's mandate issued January 20, 1995.

■ Although the issue is moot since the election has been held and Anderson defeated, we consider this appeal as an exception to the rule because of the public nature of the question, the desirability of an authoritative determination of the issue to guide public officers, and the likelihood the issue will arise in the future.

In the proceedings below, the parties stipulated to the essential facts. Because no candidate ran for the Democratic nomination for the 104th Representative District in the March 1994 primary and there was no write-in candidate, a vacancy in nomination for that position occurred. Under sections 8—5 and 8—17 of the Election Code (Code) (10 ILCS 5/8—5, 8—17 (West 1992)), the representative committee of the Democratic party for the 104th Representative District, consisting of the Democratic county chairmen from Champaign, Douglas, and Ford Counties, was entitled to fill that nomination.

On May 15, 1994, at 3 p.m., a meeting was held at the home of Geraldine Parr, county chairman for Champaign County. In attendance was Charles Conner, county chairman for Douglas County. At that meeting, these two individuals conducted the statutorily required organizational meeting under section 8—5 of the Code, after which they adopted a resolution nominating Anderson to fill the vacancy. Anderson later filed his nomination papers in a timely fashion.

The objections lodged by the petitioners did not challenge the nomination papers filed by Anderson. Instead, petitioners claimed the nomination process was invalid because the representative committee failed to give notice of its meeting to the third member of the

representative committee, Robert Mogged, county chairman for Ford County, and failed to hold the meeting within the representative district, in direct violation of section 8—5 of the Code.

The parties stipulated the residence of Parr, at which the meeting was held, is not within the 104th district. By affidavit, Mogged also averred he received no notice of the meeting at Parr's home.

In testimony before a hearing officer for the Board, David Piccoli, a Democratic house staff member, stated that, at Parr's request, he made one telephone call to Mogged's residence on the morning the meeting occurred. Piccoli testified Mogged did not answer the phone, and Piccoli did not reach an answering machine. Piccoli also conceded he did not send any letters notifying committee members of the meeting nor did he make any other attempt to advise Mogged of the meeting.

Mogged testified he was at home on the morning the meeting occurred but did not receive a telephone call. He testified he has an answering machine but was not sure if it was operational that day. Mogged first learned of the meeting several weeks after it occurred.

Parr and Conner both testified they attended the meeting at Parr's home but made no personal attempt to contact Mogged to give him notice of the meeting. Finally, the parties agreed the number of Democratic primary election voters in Ford County represented approximately 5% of the total Democratic voting population of the 104th District.

On appeal, petitioners raised two issues. They contended the failure to provide Mogged with notice of the meeting at which the representative committee organized and elected officers and adopted the resolution to fill the vacancy by nominating Anderson violated the mandatory provisions of section 8—5 of the Code rendering the nomination invalid. Petitioners also contended the failure to hold this dual-purpose meeting within the boundaries of the district also invalidated the nomination.

On the issue of notice, Anderson countered the Code does not require the representative committee give notice to members before filling vacancies in nomination. Furthermore, to the extent that section 8—5 of the Code does require notice for the purpose of organizing the committee, this provision should be construed as directory rather than mandatory because the Code does not provide an explicit sanction for failing to comply with its terms. Respondent also contended Parr and Conner substantially complied with the statute because Mogged controlled only 5% of the potential vote under the weighted voting provisions of section 8—6 of the Code (10 ILCS 5/8—6 (West 1992)) and could not have affected the outcome even had he participated.

■ We deem the inadequacy of notice to Mogged to be dispositive. Notice is fundamental. The electoral process fails and the right to vote, either as a citizen or as a representative of a political organization, is abridged if a person does not have prior notice a proceeding at which he is entitled to vote, and which affects his or her interests, is to take place. In *Shipley v. Stephenson County Electoral Board* (1985), 130 Ill. App. 3d 900, 902-03, 474 N.E.2d 905, 907, the court stated:

> "When a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or directory depends upon its purpose. [Citation.] If the provision merely directs a manner of conduct for the guidance of the officials or is designed to secure order, system and dispatch in proceedings, it is generally directory, absent negative language denying the performance if the acts required are not done in the manner designated. If, however, the conduct is prescribed in order to safeguard a person's rights, which may be injuriously affected by failure to act in the manner specified, the statute is mandatory."

Whether expressly required by statute or not, the failure to provide notice to Mogged clearly affected the voters within the district represented by him. Irrespective of the fact the percentage of voters constituted a small minority of those within the district, they and the chairman were plainly disenfranchised when Mogged failed to receive any notice the meeting to organize the committee and fill the nomination was going to take place.

As the court stated in *Shipley*, albeit under a different provision of the Code, while the manner and method of notice prescribed by the Code may be directory, the giving of some notice to interested parties is mandatory. (*Shipley*, 130 Ill. App. 3d at 902, 474 N.E.2d at 907.) In other cases, election proceedings have uniformly been held void if notice has not been given. See *Dowsett v. City of East Moline* (1956), 8 Ill. 2d 560, 134 N.E.2d 793; *Bierbaum v. Smith* (1925), 317 Ill. 147, 149, 147 N.E. 796, 796 (and cases cited therein) (stating that want of notice is "jurisdictional").

Since some form of notice is indispensable, it is immaterial the Code does not expressly provide a sanction for noncompliance. Notice is the most basic prerequisite to ensure the right to vote. Failure to provide it vitiates the integrity of the democratic process. To condone its omission would permit any representative committee member (or group of members) who control more than 50% of the weighted vote to disenfranchise the remaining minority, with impunity, merely because the minority votes might not have swayed the election. While

a voter or group of voters may decide not to vote or, ultimately, may not possess sufficient numbers to control the outcome, the ability to exercise the right to vote cannot be denied by foreclosing participation in the process through the withholding of notice.

Because of the decision we reach, we need not address the issue of the effect of the failure to hold the organizational meeting within the district.

For the foregoing reasons, the judgments of the circuit court of Sangamon County and the State Officers Electoral Board are reversed.

Reversed.

COOK and GREEN, JJ., concur.