# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Carlasare v. Will County Officers Electoral Board*, 2012 IL App (3d) 120699**

| | |
|---|---|
| Appellate Court Caption | MARIO P. CARLASARE, DONALD A. MORAN, REED BIBLE, CHESTER J. STRZELCZYK III, CHRIS MICHAEL GRIFFIN, SANTINO LETTIERI, and JOHN J. SANCHEZ, JR., Petitioners-Appellants, v. WILL COUNTY OFFICERS ELECTORAL BOARD, NANCY SCHULTZ-VOOTS, Chairman, and In Her Capacity as Will County Clerk, PAMELA McGUIRE, a Member, MARY TATROE, a Member, RON A. LULLO, DOLORES M. HORNBECK, ROBIN AMBROSIA, PAUL M. ANDERSON, M. MICHAEL REILLY, and PEGGY S. MATHEWS, Respondents-Appellees. |
| District & No. | Third District<br>Docket Nos. 3-12-0699, 3-12-0700, 3-12-0701, 3-12-0702, 3-12-0703, 3-12-0704, 3-12-0705 cons. |
| Filed | September 19, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The candidates selected by the Democratic Party to fill vacancies left for several districts of the county board in a particular county following the primary election were entitled to be on the ballot for the general election; therefore, the decision of the electoral board that the designation process used by the party was improper was reversed, since the procedures used did not violate section 7-61 of the Election Code, which governs such situations. |

| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 12-MR-1589, 12-MR-1590, 12-MR-1591, 12-MR-1592, 12-MR-1593, 12-MR-1594, 12-MR-1595; the Hon. Barbara N. Petrungaro, Judge, presiding. |
|---|---|
| Judgment | Reversed and remanded; mandate issued immediately. |
| Counsel on Appeal | Scott Pyles, of Rathbun, Cservenyak & Kozol, LLC, and Joseph M. Cernugel, of Krockey, Cernugel, Cowgill, Clark & Pyles, Ltd., both of Joliet, for appellants. |
| | James Glasgow, State's Attorney, of Joliet (Philip A. Mock, Assistant State's Attorney, of counsel), for appellee Will County Officers Electoral Board. |
| | Richard J. Kavanagh, of Kavanagh Grumley & Gorbold, LLC, of Joliet, Edward E. Ronkowski, of Mokena, and John Fogarty, Jr., of Law Office of John Fogarty, Jr., of Chicago, for other appellees. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion. Justices Lytton and Wright concurred in the judgment and opinion. |

## OPINION

¶ 1     Petitioners, Mario P. Carlasare, Donald A. Moran, Reed Bible, Chester J. Strzelczyk III, Chris Michael Griffin, Santino Lettieri, and John J. Sanchez, Jr. (collectively referred to as the candidates), filed a petition for judicial review of a decision of the Will County Officers Electoral Board (the electoral board), which ordered the Will County clerk to reject the nomination papers of the candidates for the November 2012 election for the Will County board. After a hearing, the trial court confirmed the electoral board's ruling. The candidates appeal. We reverse the decisions of the electoral board and the trial court, order that the candidates be placed on the ballot immediately, and remand this case for further proceedings.

¶ 2                                          FACTS

¶ 3     After the March 2012 primary election, the Democratic Central Committee (the central

committee) in Will County was left with several vacancies in nomination in various districts of the Will County board for the November 2012 election.[1] Pursuant to the Election Code, since no candidate had been set forth on the ballot or nominated as a write-in candidate in the primary election, a candidate had to be designated by a district committee for each county board district, which was to be comprised of only the precinct committeemen for that district. See 10 ILCS 5/7-7, 7-8.01, 7-61 (West 2010). The organization convention of the central committee was scheduled to reconvene on May 9 (the May meeting). At the May meeting, candidates were designated for each vacant slot in each of the Will County board districts (the districts). Those candidates, the seven petitioners in this appeal, obtained the requisite signatures and filed the necessary nomination papers to run as Democratic candidates for the county board in each of the various districts.

¶ 4        In June, a challenge was filed as to the nomination papers of the candidates by the following objectors: Ron A. Lullo, Dolores M. Hornbeck, Robin Ambrosia, Paul M. Anderson, M. Michael Reilly, and Peggy S. Mathews (collectively referred to as the objectors). The objectors alleged that the nomination papers were invalid, in part, because the designation process was fatally flawed in that a proper district committee was never formed to make the designation because: (1) all of the precinct committeemen for each district were not given reasonable and timely notice that such action would be taken during, or immediately after, the May meeting; and (2) Scott Pyles, the chairman of the central committee, participated in the designation process as the *de facto* chairman of each district committee, even though he was only a precinct committeeman for one of the districts and was not eligible to participate on the district committee for any other district. The objection was later expanded to include an allegation that the designation process was improper in that the designations were made by subcommittees of the district committees, which were erroneously appointed by the central committee as a whole, rather than by the district committees themselves.

¶ 5        A hearing was held over two days in June and July before the electoral board. The evidence presented at that hearing relevant to the issue raised on appeal can be briefly summarized as follows. Scott Pyles testified that he was elected the chairman of the central committee at its organization convention, which initially convened on April 18 (the April meeting). Pyles spoke at the April meeting and informed the precinct committeemen who were present that they needed to designate candidates for the county board for the upcoming election, that they would do so at the May meeting (the reconvening of the central committee organization convention), and that it was important for them to be at that meeting. Pyles did not remember who was present at the April meeting when he made that announcement or what he specifically said and did not have a copy of the minutes for that meeting with him at the electoral board hearing. A notice of the May meeting was sent by e-mail to all of the precinct committeemen (approximately 100). The notice indicated that at the date, time, and location listed, the central committee would reconvene its reorganization convention. An e-mail address and phone number were provided in the case the recipients had any questions.

---

[1]Unless otherwise noted, all of the dates listed are from the year 2012.

A notice was also posted on the Internet.

¶ 6        At the May meeting, there were about 50 to 100 people present. During the discussion of new business, Pyles again informed the precinct committeemen of the need to designate candidates for the county board spots and told them that meetings to do so would be held directly after the ongoing meeting. Pyles asked for volunteers to serve on the district subcommittees. At the end of the central committee meeting or after the meeting was over, the district subcommittees met and designated their candidates. Pyles, as chairman, was a *de facto* member of each district subcommittee but did not participate in the selection process. The designated candidates were provided with information packets regarding the steps they needed to take to obtain the nomination. During Pyles's testimony, the written notice that was e-mailed to all of the committeemen and the minutes from the May meeting were offered into evidence by the objectors. Pyles stated that he would stipulate to those documents. In addition, the electoral board had before it a list of the precinct committeemen for each of the county board districts in question.

¶ 7        Karen Gonzalez, the secretary of the central committee and one of the precinct committeemen, testified that she sent out the above notice regarding the May meeting to all of the precinct committeemen by e-mail. A written notice with the same information was also sent by United States mail. Gonzalez confirmed that Pyles had spoken about the matter at both the April and May meetings. Gonzalez stated that she used a computer program which showed whether the e-mail notices had been received but did not have the results of that program with her.[2]

¶ 8        At least one precinct committeeman was called to testify from each county board district where there was a vacancy. The testimony from those witnesses varied. Some of the witnesses remembered Pyles discussing the vacancies at the conventions; others did not remember or did not think he had done so but acknowledged that they may have been disinterested or out of the room at the time. Some of the witnesses testified that they had received a notice, either by e-mail or by mail; others did not remember getting a notice. In addition, one witness testified that he did not get a notice of the May meeting but also stated that he was in Florida for the winter months, including the dates of the April and May meetings. Another witness testified that he did not get a notice of the May meeting but stated that he was informed about the need to designate candidates at a meeting he had attended in his local township.

¶ 9        At the conclusion of the hearing, on July 24, the three-person electoral board issued a written decision. With one member dissenting, the electoral board found that the designation process was improper and that the nomination papers of the candidates should be rejected. The electoral board held that notice was a mandatory requirement of the Election Code and that notice of the district committee meetings was deficient in this case because a written notice, which would have specified that district committee or subcommittee meetings were to be held at or immediately after the May meeting for the purpose of making designations,

---

[2]Gonzalez was not subpoenaed to testify or to bring documents. The attorneys decided to call her as a witness when they learned that she was present for the electoral board hearing.

was never sent and because no evidence was presented as to whom oral notice was directed to or as to who attended the May meeting based upon the giving of oral notice. The electoral board also held that the designation process was improper because the district subcommittees were appointed by the central committee as a whole, rather than by the individual district committees. The electoral board ordered the county clerk to reject the nomination papers of the candidates.

¶ 10    One member of the electoral board dissented and stated that she disagreed with certain aspects of the majority's interpretation of the Election Code, that she would have found notice to be sufficient, and that she would have denied the challenges to the nominations.

¶ 11    On July 25, the candidates filed a petition for judicial review in the trial court. After a hearing, the trial court confirmed the decision of the electoral board. In its ruling, the trial court addressed only the issue of whether notice was sufficient under section 7-61 of the Election Code. After the trial's court's ruling, the candidates appealed.

¶ 12                                             ANALYSIS

¶ 13    On appeal, the candidates argue that the electoral board erred in finding that notice of the designation meeting was deficient and in sustaining the challenges on that basis. The candidates assert that in making its decision, the electoral board incorrectly applied a strict mandatory notice requirement that was not contained in section 7-61 of the Election Code and required that the precinct committeemen be given an independent written notice that the designation process would take place at or immediately after the May meeting. The candidates assert further that notice was provided in this case by e-mail, by mail, and by oral announcement, and that it was sufficient, as a matter of law, to comply with the Election Code's requirements. The candidates ask, therefore, that we reverse the electoral board's decision and that we order that they be placed on the ballot for the November 2012 election.

¶ 14    The objectors argue that the designation process in the present case was fatally flawed in several respects. First, according to the objectors, the district subcommittees were improperly selected by the central committee as a whole, rather than by each district committee. Second, notice of the designation meeting was deficient, which resulted in several of the precinct committeemen being wrongly excluded from the designation process. Third, chairperson Pyles was a precinct committeeman of only one of the districts and could not properly serve as a member of the district subcommittees for the other districts. Based on any one of those improprieties, the objectors ask that we confirm the electoral board's ruling.

¶ 15    Judicial review of an electoral board's decision is considered to be administrative review. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 46. On appeal in such a case, we review the decision of the electoral board, not the determination of the trial court. *Id.* The standard of review that applies on appeal is determined by whether the question presented is one of fact, a mixed question of fact and law, or a pure question of law. *Id.* ¶ 47. As to questions of fact, the electoral board's findings are considered to be *prima facie* true and correct and will not be reversed on appeal unless they are against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d

200, 210 (2008); *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006) (*per curiam*); *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 19. However, mixed questions of fact and law are reviewed under the clearly erroneous standard, and pure questions of law, such as statutory interpretation, are subject to *de novo* review on appeal. *Marconi*, 225 Ill. 2d at 532; *Cunningham*, 2012 IL App (1st) 120529, ¶ 19. In addition, as in the present case, "[w]here the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*." *Jackson*, 2012 IL 111928, ¶ 47. Regardless of which standard of review applies, the plaintiff in an administrative proceeding bears the burden of proof and will be denied relief if he or she fails to sustain that burden. *Marconi*, 225 Ill. 2d at 532-33; *Hagen v. Stone*, 277 Ill. App. 3d 388, 390 (1995) (in a proceeding to contest nomination papers, the burden of proof is on the objector). The appellate court may affirm an electoral board's decision on any basis that appears in the record, even if the electoral board relied on another basis in making its decision. *Cunningham*, 2012 IL App (1st) 120529, ¶ 34.

¶ 16        Before we address the merits of the issue raised on appeal, we must first address the objector's contention that this court lacks subject matter jurisdiction to proceed. We already ruled upon this issue in a motion to dismiss and will only briefly comment upon it here (minute order dated September 6, 2012, denying appellees' motion to dismiss the appeal). The objectors assert that jurisdiction is lacking because proof of service of the petition for judicial review was not filed within five days, as the objectors allege is required by section 10-10.1(a) of the Election Code (10 ILCS 5/10-10.1(a) (West 2010)) and because a separate service of the petition for judicial review was not made upon the county clerk in her capacity as the representative for the electoral board. We do not agree.

¶ 17        Section 10-10.1(a) of the Electoral Code states that a copy of the petition for judicial review must be served on the required parties within five days after the electoral board's decision has been served. See 10 ILCS 5/10-10.1(a) (West 2010). In our opinion, although the statute requires that proof of service be filed, it does not require that the filing take place within five days. In addition, we do not believe that it was necessary to make duplicate service of the petition for judicial review upon the county clerk to comply with the statute. See *Langenstein v. Kassimali*, 2012 IL App (5th) 120343, ¶ 7 (candidates were not required to serve county clerk twice with petition for judicial review to comply with section 10-10.1 of the Electoral Code). Thus, we reject the objectors' claim of lack of jurisdiction.

¶ 18        Turning to the merits of this issue, we are called upon to interpret various provisions of the Election Code to determine what is required in the designation process under section 7-61. In making that determination, we are mindful of the principles of statutory construction. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Jackson*, 2012 IL 111928, ¶ 48. The most reliable indicator of that intent is the language of the statute itself. *Id.* The words and phrases of a statute should not be construed in isolation and must be interpreted in light of the other relevant provisions of the statute. *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007). That approach exemplifies attention to the text. See *Town & Country Utilities, Inc.*, 225 Ill. 2d at 117. If the statutory language is clear and unambiguous, it must be applied

as written, without resorting to further aids of statutory construction. *Jackson*, 2012 IL 111928, ¶ 48. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Town & Country Utilities, Inc.*, 225 Ill. 2d at 117. If there is a conflict between the spirt of a statute and the literal language, the spirt of the statute controls. *Gill v. Miller*, 94 Ill. 2d 52, 56 (1983); *Inskip v. Board of Trustees of the University of Illinois*, 26 Ill. 2d 501, 510 (1962); *Sullivan v. People*, 156 Ill. 94, 98 (1895); see also *Church of the Holy Trinity v. United States*, 143 U.S. 457, 460 (1892). In addition, a statute should be liberally construed so as to effectuate its purpose. 5 ILCS 70/1.01 (West 2010).

¶ 19    The primary purpose of all election laws is to ensure a fair and honest election. *Pullen v. Mulligan*, 138 Ill. 2d 21, 66 (1990). The policy of this state is to provide candidates for public office with access to the ballots and, thus, to allow the citizens a vote. See *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 22; *Hossfeld v. Illinois State Board of Elections*, 398 Ill. App. 3d 737, 743 (2010). The main statute at issue in the present case is section 7-61 of the Election Code, which provides, in pertinent part:

> "If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created which may be filled in accordance with the requirements of this Section. If the name of no established political party candidate was printed on the general primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be filled only by a person designated by the appropriate committee of the political party and only if that designated person files nominating petitions with the number of signatures required for an established party candidate for that office within 75 days after the day of the general primary. The circulation period for those petitions begins on the day the appropriate committee designates that person. The person shall file his or her nominating petitions, statements of candidacy, notice of appointment by the appropriate committee, and receipt of filing his or her statement of economic interests together. These documents shall be filed at the same location as provided in Section 7-12. The electoral boards having jurisdiction under Section 10-9 to hear and pass upon objections to nominating petitions also shall hear and pass upon objections to nomination petitions filed by candidates under this paragraph.
>
> * * *
>
> In the proceedings to nominate a candidate to fill a vacancy or to fill a vacancy in the nomination, each precinct, township, ward, county or congressional district, as the case may be, shall through its representative on such central or managing committee, be entitled to one vote for each ballot voted in such precinct, township, ward, county or congressional district, as the case may be, by the primary electors of its party at the primary election immediately preceding the meeting at which such vacancy is to be filled.
>
> For purposes of this Section, the words 'certify' and 'certification' shall refer to the act of officially declaring the names of candidates entitled to be printed upon the official ballot at an election and directing election authorities to place the names of such

-7-

candidates upon the official ballot. 'Certifying officers or board' shall refer to the local election official, election authority or the State Board of Elections, as the case may be, with whom nomination papers, including certificates of nomination and resolutions to fill vacancies in nomination, are filed and whose duty it is to 'certify' candidates." 10 ILCS 5/7-61 (West 2010).

¶ 20   In interpreting the statute, the first question we must determine is whether the district subcommittees were properly selected. The electoral board found that the selection of the subcommittee members was improper because it was made by the central committee as a whole rather than by only the members of each district committee. There is no dispute that the "appropriate committee" to make the designation in this case, as referenced in section 7-61, was a district committee comprised of precinct committeemen only from that particular district, and that each district committee could properly delegate the task of designation to a district subcommittee. See 10 ILCS 5/7-7 (West 2010) ("[f]or the purpose of making nominations in certain instances as provided in this Article and this Act, the following committees are authorized and shall constitute the central or managing committees of each political party, viz: *** a county board district committee for each county board district created under Division 2-3 of the Counties Code"); 10 ILCS 5/7-8.01 (West 2010) ("[t]he county board district committee of each political party in each county board district *** shall consist of the precinct committeemen of the precincts included in the county board district"); 10 ILCS 5/7-8(i) (West 2010); *Allen v. Electoral Board*, 147 Ill. App. 3d 782, 785 (1986) (section 7-8(i) of the Election Code allowed central committee of political party to delegate the task of filling a vacancy in nomination to its executive committee).

¶ 21   The electoral board found that the district subcommittees must be nominated or appointed by the district committees and not the central committee itself. None of the statutory sections referenced above set forth a specific procedure for making a section 7-61 designation. We cannot read such a limitation into the statute. See *Town & Country Utilities, Inc.*, 225 Ill. 2d at 117. The Electoral Code merely specifies that the designation must be made by a committee composed of precinct committeemen for that particular district only. See 10 ILCS 5/7-7, 7-8.01 (West 2010). In this case, it is undisputed that the district subcommittees were comprised of volunteers from the appropriate districts. We find nothing improper about the procedure that was followed in the present case or the manner in which the district subcommittees were selected. We express no view regarding whether another process would also comply with the statute.

¶ 22   The next question we must determine is whether the notice that was provided in the present case of the designation meeting was deficient. Again, the statute is devoid of explicit direction regarding proper notice. The electoral board found that notice was deficient because the evidence presented at the hearing did not establish that notice had been given to all of the precinct committeemen of the various county board districts and because the notice that was given did not specify that a meeting of the district committees would be held at the end of the May meeting for the purpose of designating candidates to fill the vacancies. Section 7-61, however, makes no mention of notice for the designation process and does not establish a specific notice procedure or a penalty for failing to provide notice. See 10 ILCS 5/7-61 (West 2010).

¶ 23 In addressing a similar issue in *Graham v. State Officers Electoral Board*, 269 Ill. App. 3d 609 (1995), the Fourth District Appellate Court found that notice was fundamental to a fair election process, that it was a mandatory requirement, and that it had to be given to all of the persons entitled to vote on the matter, even if a particular person's vote would not change the result. See *Graham*, 269 Ill. App. 3d at 612-13. The electoral board and the trial court in the present case relied on *Graham* in finding that the instant notice was deficient.

¶ 24 Providing some type of notice is fundamental to a fair election process and is a mandatory requirement in making a section 7-61 designation. See *Graham*, 269 Ill. App. 3d at 612-13. However, we cannot dictate specific notice requirements that apply under section 7-61, since the legislature did not write any specific notice requirements into the statute. See *Town & Country Utilities, Inc.*, 225 Ill. 2d at 117. Without an explicit process for the form of notice, pursuant to our interpretation of the statute and contrary to the electoral board's conclusion, we believe that the written notice that was given in this case was sufficient to comply with the implied notice requirement of section 7-61. Since the May meeting was a central committee convention at which the party had the power to select a committee to designate candidates, a separate notice indicating that designations would be made was not required. See 10 ILCS 5/7-9(d) (West 2010) ("[e]ach convention may perform all other functions inherent to such political organization and not inconsistent with this Article"); *People ex rel. Kell v. Kramer*, 328 Ill. 512, 517 (1928) (political organizations have the inherent power to conduct general elections, to manage campaigns, and to discharge other functions). In the absence of statutory clarity or prior decisions construing the form of notice required, the resolution of this question must be made by considering the evidence presented in light of the statutory purpose. At the hearing before the electoral board, the parties stipulated to the written notice that was given. The testimony was that the written notice had been sent by e-mail and by United States mail to all the precinct committeemen and had been posted on the Internet. The electoral board found that the written notice in question had, in fact, been sent. Any determination beyond that point by the electoral board as to whether the written notice was actually received by the committeemen was erroneous and unnecessary.

¶ 25 However, even if we were to find that the written notice, by itself, was lacking, we would still conclude that under the totality of the circumstances present in the instant case, sufficient notice was provided of the designation meeting. Along with the written notice, oral notice of the upcoming designations was given at both the April and May meetings. The burden to show that certain precinct committeemen were not present when oral notice was given fell upon the objectors, not the candidates. See *Marconi*, 225 Ill. 2d at 532-33; *Hagen*, 277 Ill. App. 3d at 390. Thus, we believe that all of the notice provided in the instant case was sufficient to comply with section 7-61 of the Election Code.

¶ 26 Having determined that the selection of the district subcommittees was proper and that the notice that was given was sufficient under the Election Code, the final question we must address is whether chairman Pyles's participation on each district subcommittee as the *de facto* chairman was improper and rendered the designation invalid. As a general rule, political parties are free to conduct business at their meetings in a manner that is consistent with that party's own internal rules and procedures. See *People ex rel. Kell*, 328 Ill. at 518-19. The Democratic party's policy in this particular circumstance was that the chairman of

the central committee would serve as the *de facto* chairman of the regional subcommittees. Thus, it was not improper for Pyles to serve in that capacity in the instant case. See *People ex rel. Kell*, 328 Ill. at 518-19. Furthermore, the electoral board made a specific finding of fact that Pyles did not actively participate in the designation process, a finding which is not challenged by either party in this appeal. Thus, we conclude that Pyles's participation was not improper.

¶ 27 For the foregoing reasons, we reverse the decisions of electoral board and the trial court. We order that the candidates be immediately placed on the ballot for the 2012 Will County board election. We remand this case for further proceedings consistent with this order. The mandate in this case is to issue immediately. Ill. S. Ct. R. 368(a) (eff. July 1, 2006).

¶ 28 Reversed and remanded; mandate issued immediately.