# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Burke v. Electoral Board of the Village of Bradley**, 2013 IL App (3d) 130141

---

| | |
|---|---|
| Appellate Court Caption | CHARLES "CHUCK" BURKE, Petitioner-Appellant, v. THE ELECTORAL BOARD OF THE VILLAGE OF BRADLEY, and BRUCE ADAMS, ROBERT REDMOND and GERALD BALTHAZOR, Members, and MICHAEL SMITH, Objector, Respondents-Appellees. |
| District & No. | Third District<br>Docket No. 3-13-0141 |
| Rule 23 Order filed | March 29, 2013 |
| Motion to publish allowed | May 24, 2013 |
| Opinion filed | May 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The decision of respondent electoral board excluding petitioner from the ballot as a candidate for the office of village clerk was reversed, where the board erred in imputing to petitioner a fine owed to the village by a corporation in which he had an interest and finding that petitioner owed the village for sewer services, since a corporation is separate and distinct from its shareholders and officers and the village had never billed petitioner for the sewer services. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 13-MR-67; the Hon. James B. Kinzer, Judge, presiding. |
| Judgment | Electoral Board reversed; circuit court reversed in part and affirmed in part. |

Counsel on
Appeal

Jennifer J. Sackett Pohlenz, of Clark Hill PC, of Chicago, for appellant.

Paul L. Stephanides, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Mokena, and M. Neal Smith, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee Electoral Board of the Village of Bradley.

James R. Rowe, of Law Firm of Rowe & Associates, of Kankakee, for appellee Michael Smith.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice Wright and Justice McDade concurred in the judgment and opinion.

**OPINION**

¶ 1  Charles "Chuck" Burke filed nomination papers for the office of village clerk of the Village of Bradley, Illinois, to be elected at the consolidated election to be held on April 9, 2013. Michael Smith filed an objection to those petitions. The Electoral Board of the Village of Bradley (Electoral Board) sustained Smith's objection and ordered that Burke's name shall not be printed on the official ballot. Burke sought review with the circuit court of Kankakee County, which confirmed in part and reversed in part the Electoral Board's decision. Burke appeals, claiming the Electoral Board erred when finding monies due the village from Burke, Montague and Associates, LLC, are attributable to him personally and sufficient to disqualify him from being a candidate. Smith cross-appeals, claiming that the trial court erred in holding that monies due the village by Burke for sewer service are not an arrearage sufficient to disqualify Burke from being a candidate.

¶ 2  BACKGROUND

¶ 3  On December 20, 2012, Charles "Chuck" Burke filed his statement of candidacy seeking the office of village clerk of the Village of Bradley, Illinois. Burke also filed the necessary petitions for nomination containing the adequate number of voters' signatures in support of his candidacy. Thereafter, on January 2, 2013, Michael Smith wrote a letter to Michael LaGesse, the village clerk for the Village of Bradley. The letter voices Smith's "objection to the nominating petition of Charles Burke." The letter indicates that Smith is a resident of the Village of Bradley and characterizes the "nature" of Smith's objection being "that Charles Burke is in arrears in the payment of a tax or other indebtedness due to the Village

-2-

of Bradley" in violation of section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2010)). Smith's letter does not identify what debt is owed by candidate Burke to the village, how long Burke has been in arrears, or in what amount Burke is in arrears to the village.

¶ 4     The Electoral Board convened on January 14, January 23, and January 25, 2013, for the purpose of hearing Smith's objections. The Electoral Board consisted of Bruce Adams, Gerald Balthazor and Robert Redmond. Burke filed a motion to remove Adams as a member of the Electoral Board. The motion claims that Adams is the chairman of the Friends of Bruce Adams Political Committee and that Smith's "employer and its affiliates have made significant contributions to" Adams' committee. The motion then details $9,250 in contributions allegedly made to Adams' committee from entities associated with the objector.

¶ 5     The motion further noted that Burke is the only adversary to current village clerk, Mr. LaGesse, and that hearing officer Adams acted as a circulator for Mr. LaGesse, obtaining 50 signatures in support of LaGesse's candidacy. One of the signatures Adams collected for the petitions of Mr. LaGesse is that of the objector, Michael Smith.

¶ 6     The matter proceeded to a hearing, which took place over three days. The record reflects that member Balthazor of the Electoral Board did not attend the first day of the hearing, January 14, 2013. On that day, counsel for the objector requested the Electoral Board issue a subpoena for "the personal sewer bills from the Village of Bradley" for Burke's residence as well as "any and all business records, business applications, licenses issued to Burke, Montague & Associates."

¶ 7     Burke objected to the request for the subpoena, noting that the objector sought records "from today's date backwards." Burke questioned the relevance of bills, fees, or charges generated after the date he filed his petitions. The Electoral Board overruled Burke's objection and allowed the subpoenas to issue.

¶ 8     Also at the original hearing on January 14, 2013, Burke requested "all the documents relating to his claim," referring to Smith's objection to Burke's candidacy. The Electoral Board's attorney informed Burke that he would be given the documents "at the hearing when we reconvene," noting Burke will "have any and all documents that the objector wishes to present into evidence at that time." Burke questioned why he would not be given the documents prior to the hearing "unless [Smith's] claim was simply a fishing expedition." The Electoral Board attorney then reiterated that Burke would not be given the documents until the next hearing date. Burke repeatedly objected to having to respond to Smith's allegations on the same date he would be provided documents in support thereof. The Electoral Board Chairman Adams responded to Burke's final objection stating, "Your objection is duly noted. I will ask for a motion to adjourn."

¶ 9     The Electoral Board reconvened on January 23, 2013. All three members of the Board appeared at this hearing. The hearing began discussing pending motions, including Burke's motion to dismiss and motion to force the recusal of Adams. While the attorney for the Electoral Board noted Smith filed a written response to Burke's motions, Burke stated that he had not received the response. The Electoral Board then provided Burke the response.

Burke, again, noted that he had not been provided any documentation regarding alleged debts in arrears to the village prior to the hearing. As such, he indicated that "anything brought up here I believe is an unfair surprise."

¶ 10    In Smith's response to Burke's motion seeking to force Chairman Adams' recusal, Smith does not deny that his employer and its affiliates have donated ample sums to Adams' political committee. Smith simply notes that he "is an individual and, obviously, his employer is a distinct and separate entity." As the parties argued the motions, Smith's attorney acknowledged that "Mr. Smith is the president" of the entities contributing to Adams' political committee but "they were a business entity." The Electoral Board denied Burke's motion, noting that "being a political adversary toward a candidate is insufficient to require the removal of an electoral board member." The Electoral Board did not address Burke's concerns voiced in his motion regarding the fact that affiliates of the objector contributed to Adams' political committee.

¶ 11    When the hearing continued, the objector called Danielle Dugan to testify. Ms. Dugan is the "village sewer clerk." She testified that sewer services "were provided [to Burke], but there was no sewer bill." She acknowledged that five days prior to the hearing, she prepared a document showing Burke owed $1,456.52 for sewer services, but never sent it to Burke as she "wasn't told to send anything to [Burke]." She was "just told to prepare it."

¶ 12    Dugan was asked if she was familiar with section 54-110 of the Village of Bradley Code of Ordinances titled, "Billing procedures and penalties." Village of Bradley Code of Ordinances § 54-110 (eff. Apr. 28, 2008). She indicated that she "wouldn't know the codes." Chapter 54 applies to the village's utilities. Burke noted that section 54-110 states, "User charges for sewage services established by this article shall be made monthly for all customers. Each bill when rendered shall be due and payable within 15 days of the billing date, after which a penalty of two percent shall be added and shall be collected as part of the bill." Village of Bradley Code of Ordinances § 54-110(a) (eff. Apr. 28, 2008).

¶ 13    Burke, acting *pro se*, asked Dugan the following question: "During your tenure have any bills been mailed on this account?" Dugan unequivocally answered, "No."

¶ 14    Kimberly Dickens testified before the Electoral Board that she is the village administrator for the Village of Bradley. She identified an application for a business license from Burke, Montague and Associates, LLC. The application identifies Charles Burke as the owner of the business located at 253 West Broadway, Bradley, Illinois.

¶ 15    Dickens identified various notices of ordinance violations issued "to Burke, Montague & Associates" for improper rubbish/garbage disposal or accumulation. She noted that eight tickets were issued in 2008 and at least $25 "still remains to be paid" on "each ticket."

¶ 16    Dickens further testified that a "customer or a property owner" needs "to contact the village when they move into the village to a property in the village and set up sewer services now. Prior to 2011 it was sewer and garbage." She was also not aware of any bill for sewer service ever being mailed to Burke.

¶ 17    On January 25, 2013, the Electoral Board convened again to conclude its hearings in this matter. On that date, Burke recalled Dugan to testify. She authenticated a number of exhibits, which she identified as Village of Bradley sewer bills issued to the "service address" of "P.O.

Box 390, Bradley, Illinois, 60915." Dugan stated that the paid bills are attributable to Burke, Montague and Associates' address and not Burke's home address. She noted, "P.O. Box is not the address, the physical address that he should have put."

¶ 18 The Electoral Board found that "evidence showed that the candidate failed to pay for receipt of sewer service at the candidate's residence." It further noted that the "amounts due and owning" for the sewer services "are delinquent accounts for which the candidate was indebted to the village and in arrears." Citing to section 2-485 of the Village of Bradley Code of Ordinances, the Electoral Board found the unpaid sewer charges met the definition of a delinquent account as defined by that ordinance.

¶ 19 The Electoral Board also found that the candidate is the owner of Burke, Montague and Associates, LLC, and that eight fines "were issued against the business" for ordinance violations. The Electoral Board then noted that the "evidence showed that the candidate did not pay these outstanding fines after the expiration of the time by which he could have sought judicial review. The evidence further showed that the fines remain unpaid to this date. Thus, the candidate is in arrears to the village for the non-payment of these fines ***." Finally, the Electoral Board then concluded "that the candidate's nomination papers are invalid" for failure to pay the sewer charges and failure to pay the fines leveled against Burke, Montague and Associates, LLC. As such, it ordered Burke's name "shall not be printed on the official ballot for the consolidated election to be held on April 9, 2013."

¶ 20 Burke sought judicial review of the Electoral Board's finding pursuant to section 10-10.1 of the Illinois Election Code (10 ILCS 5/10-10.1 (West 2010)). The circuit court of Kankakee County confirmed the Electoral Board's holding as it pertained to the ordinance violations issued to Burke, Montague and Associates, LLC. However, the court reversed the Electoral Board's holding pertaining to sewer charges, finding "that unbilled sewer charges are not debts."

¶ 21 Burke appealed to this court, claiming that both the Electoral Board and the circuit court erred in finding that fines levied against Burke, Montague and Associates, LLC, render him ineligible to run for municipal office. Smith cross-appeals the holding of the circuit court, which found the Electoral Board erred in its decision that the sewer charges do not equate to unpaid debts owed to the municipality.

¶ 22                                              ANALYSIS

¶ 23 "[T]he burden of proof in a proceeding to contest nominating petitions lies with the objector ***." *Hagen v. Stone*, 277 Ill. App. 3d 388, 390 (1995); *Carlasare v. Will County Officers Electoral Board*, 2012 IL App (3d) 120699.

¶ 24 This court views an electoral board as an administrative agency. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). As such, we employ traditional standards of review associated with reviews from administrative agencies. *Id.* at 211. Those standards are threefold: (1) an agency's decision on a question of law is not binding on a reviewing court and, as such, we review questions of law *de novo*; (2) we show deference to an agency's factual findings, reviewing them only to determine if they are against the manifest weight of the evidence; and (3) we review mixed questions of law and

fact to determine whether they are clearly erroneous. *Id.* at 210-12.

¶ 25 An administrative agency's factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998). "Mixed questions of law and fact are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." (Internal quotation marks omitted.) *Cinkus*, 228 Ill. 2d at 211. An agency's decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

¶ 26 Candidate Burke sought review of the Electoral Board's decision pursuant to section 10-10.1 of the Illinois Election Code (10 ILCS 5/10-10.1 (West 2010)). Where "a circuit court reviews an electoral board's decision pursuant to section 10-10.1 of the Election Code, we review the decision of the board, not the court." *Cinkus*, 228 Ill. 2d at 212.

¶ 27 A. Ordinance Violations of Burke, Montague and Associates, LLC

¶ 28 To arrive at its conclusion that alleged debts of Burke, Montague and Associates, LLC, are sufficient to keep the candidate off the ballot, the Electoral Board walked the following path of analysis. The Electoral Board began its analysis in this matter by referring to section 3.1-10-5(b) of the Illinois Municipal Code, which renders a person ineligible for office "if that person is in arrears in the payment of a tax or other indebtedness due to the municipality." 65 ILCS 5/3.1-10-5(b) (West 2010). It then noted that the village issued a business license for Burke, Montague and Associates, LLC, which identifies the candidate as an owner of that business. The Electoral Board continued, finding that fines were issued "against the business" for village code violations, eight of which remain outstanding. Finally, the Electoral Board concluded that "the candidate is in arrears to the village for the non-payment of these fines under the Supreme Court's holding in *Cinkus*."

¶ 29 We find the Electoral Board's analysis lacking. We hold, as a matter of law, that the Electoral Board erred when imputing the alleged debt of Burke, Montague and Associates, LLC, onto the candidate. "A corporation is a legal entity separate and distinct from its shareholders, directors, and officers." *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 172 (1994).

¶ 30 *Cinkus*, identified by the Electoral Board as the sole authority to support its conclusion, involved an ordinance violation issued directly to the candidate in his individual capacity. *Cinkus*, 228 Ill. 2d at 204. Law enforcement cited the candidate in *Cinkus* for disorderly conduct in violation of the Village of Stickney's municipal code. *Id.* The matter proceeded to hearing, resulting in a judgment being entered in favor of the village and against the candidate. *Id.* The candidate failed to pay that judgment prior to filing his nominating petitions. *Id.*

¶ 31 Obviously, there are significant differences between *Cinkus* and the case at bar. Most notably, the ordinance violation at issue in *Cinkus* was actually issued to the candidate and not a legal entity separate and distinct from the candidate. Moreover, the village in *Cinkus*

obtained a judgment against the candidate for the amount owed on the ordinance violation. There is no evidence in the record that the Village of Bradley obtained a judgment against Burke. *Cinkus* does not support the Electoral Board's finding that the candidate "is in arrears to the village for non-payment of" the fines associated with Burke, Montague and Associates, LLC's ordinance violations.

¶ 32    Neither the Electoral Board nor the objector has identified a single case holding that section 3.1-10-5(b) bars the candidacy of an individual due to the debt of a corporation. Our research has similarly failed to identify a single reported case in which a court has imputed the debt of a corporation to a candidate then disqualified the candidate under section 3.1-10-5(b). See *Jackson v. Board of Election Commissioners*, 407 Ill. App. 3d 837 (2011); *Grabavoy v. Wilson*, 87 Ill. App. 2d 193 (1967); *People v. Hamilton*, 24 Ill. App. 609 (1887); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 220 (2008); *Stinson v. Chicago Board of Election Commissioners*, 407 Ill. App. 3d 874 (2011).

¶ 33    We find section 3.1-10-5(b) of the Illinois Municipal Code does not disqualify Burke from running for the office of village clerk due to unpaid ordinance violations issued to Burke, Montague and Associates, LLC.

¶ 34                                  B. Sewer Charges

¶ 35    As noted above, the Electoral Board found Burke "was indebted to the village and in arrears" for "amounts due" for sewer services. As such, it sustained the objection to Burke's nominating papers and ordered his name "shall not be printed" on the ballot. Burke sought judicial review of that decision pursuant to section 10-10.1 of the Illinois Election Code (10 ILCS 5/10-10.1 (West 2010)). The circuit court reversed the Electoral Board's decision pertaining to the sewer charges, finding that "unbilled sewer charges are not debts." Objector Smith cross-appeals from that holding of the circuit court.

¶ 36    Again, "we review the decision of the board, not the court." *Cinkus*, 228 Ill. 2d at 212. As such, our analysis will focus on the proceedings in front of the Electoral Board, its holdings and decision. Whether the Electoral Board correctly found Burke's failure to pay for unbilled sewer services rendered him "in arrears" in violation of section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2010)) is a mixed question of law and fact. As such, we review the Electoral Board's decision under the clearly erroneous standard. *Cinkus*, 228 Ill. 2d at 211. A decision is clearly erroneous when we are left with the definite and firm conviction that a mistake has been committed. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395.

¶ 37    We find the Electoral Board's decision is clearly erroneous. Therefore, we reverse the decision of the Electoral Board that holds "the candidate's sewer service accounts for this properties were delinquent due to his failure to pay for receipt of sewer service to the village," which, therefore, rendered him ineligible to run for office pursuant to section 3.1-10-5(b) of the Illinois Municipal Code. That section states that a "person is not eligible for an elective municipal office if that person is in arrears in the payment of a tax or other indebtedness due to the municipality." 65 ILCS 5/3.1-10-5(b) (West 2010).

¶ 38    Close to 100 years ago, our supreme court noted that "Arrears or arrearages, as defined

-7-

by our best lexicographers, are some things overdue and unpaid, outstanding debts or liabilities, and that is a common definition of these terms when found in the law." *Board of Education of Glen Ellyn Township High School District No. 87 v. Boger*, 291 Ill. 191, 199 (1919). The Village of Bradley's own ordinances make clear that the charges associated with Burke's use of the sewer were not overdue.

¶ 39      Section 2-485 of the Village of Bradley Code of Ordinances states:

"Delinquent account means any account with the village for which the amount owed to the village has not been paid by the tenth day after the amount became due, unless otherwise provided by this Code." Village of Bradley Code of Ordinances § 2-485 (eff. Apr. 28, 2008).

¶ 40      Moreover, as noted above, the village has an entire subset of ordinances which apply to sewer charges. Section 54-110 of that subset states:

"User charges for sewage services established by this article shall be made monthly for all customers. *Each bill when rendered shall be due and payable* within 15 days of the billing date, after which a penalty of two percent shall be added and shall be collected as part of the bill." (Emphasis added.) Village of Bradley Code of Ordinances § 54-110(a) (eff. Apr. 28, 2008).

¶ 41      The plain language of this section establishes that monies owed for sewer services are "due and payable within 15 days of the billing date." The record is clear, and the objector and Electoral Board acknowledge, that there was no billing date for sewer service associated with Burke's residence prior to the filing of his statement of candidacy and nominating petitions. That is, no bill was ever "rendered." Section 2-485 unequivocally indicates that an account is not delinquent until "the tenth day after the amount became due." Village of Bradley Code of Ordinances § 2-485 (eff. Apr. 28, 2008). Having never been billed for the sewer services, the amounts Burke owed for them never became due prior to the filing of his nominating papers.

¶ 42      The Electoral Board's finding that Burke was in arrears to the village for unbilled sewer services leaves us with the definite and firm conviction that a mistake has been committed. As such, we find the Electoral Board's ruling clearly erroneous and reverse the Electoral Board's decision.

¶ 43      "The policy of this state is to provide candidates for public office with access to the ballots and, thus, to allow the citizens a vote." *Carlasare v. Will County Officers Electoral Board*, 2012 IL App (3d) 120699, ¶ 19. As noted by our supreme court, the guiding principle of Illinois public policy is to favor "ballot access for candidates running for public office." *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 22. That principle unquestionably supports our holding that the Electoral Board's finding is clearly erroneous that Smith satisfied his burden of proof when objecting to Burke's nominating papers.

¶ 44                          C. Additional Challenges

¶ 45      The candidate raises additional challenges to the Electoral Board's ruling including: (1) the ordinance violations issued to Burke, Montague and Associates, LLC, were never

adjudicated and, as such, cannot constitute a debt; (2) the ordinance violations are barred by the statute of limitations; (3) the Electoral Board allowed untimely amendments to the objector's petition; and (4) the Electoral Board's hearing was fundamentally unfair. In light of our rulings above, reversing the decision of the Electoral Board, we need not address the additional issues presented.

¶ 46                                    CONCLUSION

¶ 47        For the foregoing reasons, the decision of the Electoral Board is reversed. To the extent that it is consistent with this order, the judgment of the circuit court of Kankakee County is affirmed. To the extent the judgment of the circuit court confirmed the Electoral Board, it is reversed.

¶ 48        Electoral Board reversed; circuit court reversed in part and affirmed in part.