FOURTH DIVISION

No. 1-11-0361

| | | |
|---|---|---|
| EILEEN JACKSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | 11 COEL 18 |
| | ) | |
| THE BOARD OF ELECTION COMMISSIONERS | ) | The Honorable |
| OF THE CITY OF CHICAGO sitting as the duly | ) | Maureen Ward Kirby |
| constituted Electoral Board to hear and pass upon | ) | Presiding. |
| Objections to the nomination papers of candidates | ) | |
| for the office of Alderman of the 28th Ward of the | ) | |
| City of Chicago for the February 22, 2011 | ) | |
| Municipal General Election in the city of Chicago, | ) | |
| Illinois, and its members, Langdon D. Neal, | ) | |
| Richard A. Cowen and Marisel A. Hernandez, and | ) | |
| CARMELITA P. EARLS, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.

Presiding Justice Gallagher and Justice Lavin concurred in the judgment and opinion.

## OPINION

In this appeal, we decide a case of first impression: whether a candidate in arrears on her property taxes is also in arrears in the payment of taxes due to the city within the prohibition of section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2008)). An objector's petition was filed to candidate Carmelia P. Earls' nominating papers to run for alderman, claiming that Earls was ineligible to run because she owed property taxes due to improperly claiming homeowner's exemptions on multiple properties for previous tax years. A

hearing was held and the hearing officer overruled the objection, relying on a letter from the city of Chicago that the candidate did not owe any debt to the city. The Electoral Board adopted the hearing officer's recommendation and overruled the objector's petition, also ruling that the payment of property taxes is not a debt owed to the city and that section 3.1-10-5(b) of the Illinois Municipal Code did not apply. We hold that, notwithstanding the city's letter, the statutory enactments of the property tax collection system establish that the portions of property tax levied by the city of Chicago, though collected by Cook County, are taxes due to the city. Therefore, the candidate was ineligible to run under section 3.1-10-5(b) of the Illinois Municipal Code.

## BACKGROUND

Respondent-appellee Carmelita P. Earls filed nominating papers on November 22, 2010, to run as alderman for the 28th Ward of the city of Chicago for the February 22, 2011 municipal general election. An objector's petition was filed by petitioner-appellant Eileen Jackson, stating that Earls was not qualified to run on the ballot as she was in arrears and owed a debt to the city of Chicago because of back property taxes due to her wrongfully receiving three homeowner's exemptions on properties she owned, when she was only entitled to one exemption. The petition stated Earls failed to pay the full amount of property taxes, which included amounts owed to the city of Chicago, going back at least two years. The petition alleged that because Earls owed these debts to Chicago, Earls was in violation of the Illinois Election Code (10 ILCS5/1-1 *et seq*. (West 2008) and Municipal Code and pursuant to *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200 (2008), her nomination papers were invalid.

2

Previously, Earls received a letter from the city of Chicago department of revenue dated November 17, 2010, indicating that the city did not find a record of certain delineated debts, specifically stating the following:

> "Please accept this as confirmation that no outstanding debt was found across any of the debt types, Parking, Water, Administrative Hearings, Inspection Fees, Cost Recovery and Tax/Licensing."

Petitioner-appellant Eileen Jackson filed an objector's petition to Earls' nominating papers on November 30, 2010, listing a variety of objections, including the fact that Earls was in arrears for amounts due to the city of Chicago by virtue of property taxes in arrears due to illegally claimed exemptions for previous years on multiple properties.

On December 6, 2010, the Cook County assessor's office sent a letter to Earls and her husband at their 37 N. Long residence, informing them that it had come to the office's and Alderman Smith's attention that they have received homeowner's exemptions on multiple properties. The letter outlined the dollar values of the exemptions Earls received for each of the properties. For 555 N. Lawler, Earls received a $963.20 exemption for 2008 and a $669.16 exemption for 2009. For 552 N. Lawler, Earls received a $578.55 exemption for 2008 and a $721.03 exemption for 2009. In response to this notice from the county assessor's office, Earls paid the amount owed in back taxes for the two properties on December 14, 2010.

A hearing was conducted by William Cadigan of the Chicago Board of Elections. The objector introduced into evidence public records showing that Earls had claimed a homeowner's exemption on three properties: 552 N. Lawler, 555 N. Lawler, and 37 N. Long, in Chicago,

Illinois, although Earls in fact resided at 37 N. Long. These public records included the

following: copies of the deeds for 552 N. Lawler and 555 N. Lawler, showing that Earls and her

husband held title to both properties as tenants by the entirety; title insurance for the 37 N. Long

property indicating Earls and her husband held title as joint tenants; records printed from the

Cook County assessor's Web site showing a claimed homeowner's exemption status for 555 N.

Lawler in 2008 and 2009; the December 6, 2010, letter from the Cook County assessor's office

sent to Earls; 2008 and 2009 homeowner's exemption applications for 552 N. Lawler and 555 N.

Lawler; three original certified 2009 second installment tax bills produced by the Cook County

treasurer's office for all three properties; original certified PIN payment summaries produced by

the Cook County treasurer's office for all three properties; copies of relevant statutory provisions;

and a summary of the records relating to the properties and the tax levy and rates for the city of

Chicago for the years 2008 and 2009. Earls testified that she in fact had lived at 37 N. Long since

2007. Earls also testified that she was the one who paid the property tax bills.

The hearing officer relied on the letter from the city of Chicago indicating the city did not

find a record of the types of debts delineated and overruled the objection. The Board of Elections

adopted the hearing officer's recommendations and found that the facts did not fall within the

relevant provision of the Illinois Municipal Code and the holding of the *Cinkus* case because "the

only evidence of indebtedness presented was regarding an amount owed to the Cook County

Assessor." The Board did not address the argument made that Cook County collects certain

amounts in property taxes for the city of Chicago, which it then disburses to the city. The

objector appealed to the circuit court, and the circuit court entered an order affirming the

1-11-0361

Electoral Board. This appeal followed.

## ANALYSIS

On appeal, Jackson contends that the Board erred in finding that Earls' nomination papers were valid because the debt she amassed by unlawfully obtaining homeowners exemptions on two of her properties constituted arrearages due to the city of Chicago. Because Earls was indebted to the city of Chicago at the time she filed her nomination papers, Jackson argues that she was precluded from running for elected office pursuant to section 3.1-10-5(b) of the Municipal Code 65 ILCS 5/3.1-10-5 (West 2008).

In response, Earls initially contends that the issue of whether she erroneously received homeowners exemptions to which she is not entitled is beyond the scope of the authority vested in the Board of Elections, and she argues that the Board's authority is limited to simply ascertaining whether her papers comply with provisions of the Illinois Election Code governing those papers. Nonetheless, she argues that she did not owe a debt to the city of Chicago at the time she filed her nomination papers. She maintains that property taxes are payable to the Cook County treasurer, not the city of Chicago. Accordingly, unauthorized homeowner's exemptions would not constitute a debt to the city of Chicago, and section 3.1-10-5(b) of the Municipal Code does not preclude her from running for alderman for the 28th Ward.[1]

Initially, we find Earls' argument that the issue of whether she received unauthorized

_____

[1] We acknowledge that the Board also filed an appellee brief; however, the Board did not address the merits of its decision in its brief. Instead, the Board merely apprised this court of the status of ballot preparation, testing, production, and distribution.

5

homeowner's exemptions was beyond the scope of the Board's authority to be without merit. It is well within the Board's authority to determine whether a candidate meets the qualifications for elective office set forth in section 3.1-10-5 of the Illinois Municipal Code (65 ILCS 5/3.1-10-5 (West 2008)). See generally *Bryant v. Board of Election Commissioners,* 224 Ill. 2d 473 (2007) (order) (reviewing an election board's decision as to whether the candidate was qualified to run for elective office pursuant to section 3.1-10-5 of the Illinois Municipal Code). More specifically, it is well within the Board's authority to determine whether a candidate is precluded from running for, or holding, an elected municipal office because he or she owes a debt to a municipality pursuant to section 3.1-10-5(b). See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200 (2008) (reviewing an election board's finding that a candidate was indebted to the village and was not entitled to run for a village trustee office). Accordingly, the issue as to whether Earls met the qualifications for elective office or whether she is precluded from running for alderman because she possessed a debt to the city of Chicago pursuant to section 3.2-10-5(b) of the Illinois Municipal Code was properly before the Board and is properly before this court.

As a threshold matter, we must determine our proper standard of review. Jackson, the only party to address the standard of review applicable to this appeal, contends that the Board's decision is subject to *de novo* review. We disagree.

An electoral board is an administrative agency and only possesses the powers conferred upon it by the legislature. *Cinkus*, 228 Ill. 2d at 209; *Delgado v. Board of Election Commissioners,* 224 Ill. 2d 481, 485 (2007) (order). On appeal, a reviewing court reviews the

decision of the board, not the circuit court. *Cinkus*, 228 Ill. 2d at 212; *Ramirez v. Andrade*, 372 Ill. App. 3d 68, 73 (2007). In reviewing an administrative agency's decision, the applicable standard of review depends upon whether the question raised on appeal is one of fact, one of law, or a mixed question of fact and law. *Cinkus*, 228 Ill. 2d at 210; *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). An administrative agency's factual findings and credibility determinations are deemed *prima facie* true and correct, and a reviewing court is limited to ascertaining whether those findings are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210; *City of Belvidere*, 181 Ill. 2d at 205. An administrative agency's conclusions regarding questions of law, in contrast, are not subject to deference; rather, the court's review is independent and not deferential. *Cinkus*, 228 Ill. 2d at 211; *City of Belvidere*, 181 Ill. 2d at 205.

However, a mixed question of fact and law can present even if the facts are clear and admitted, the rule of law is undisputed, and the issue is simply whether or not the law as applied to the facts is violated. *Cinkus*, 228 Ill. 2d at 211. Ultimately, an administrative agency's decision involving a mixed question of law will not be disturbed on appeal unless that decision is clearly erroneous. *Cinkus*, 228 Ill. 2d at 211; *City of Belvidere*, 181 Ill. 2d at 205. A decision is "clearly erroneous" only in circumstances in which the reviewing court is left with " '[a]definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Here, there is no dispute as to the facts. The record reflects that Earls filed her

nomination papers on November 22, 2010. Thereafter, on December 6, 2010, a letter addressed to Earls and her husband was sent by the Cook County assessor's office, informing them that they had erroneously claimed two unauthorized homeowner's exemptions. Upon receipt of the letter, Earls paid the back taxes on December 14, 2010. Earls does not dispute that homeowner's exemptions were claimed on the multiple properties and that she owed back taxes for these improper exemptions at the time she filed her nominating papers. Earls further does not dispute that she later paid these back taxes. Accordingly, there is no dispute that at the time Earls filed her nomination papers, she was in arrears on her property taxes.

The law is also undisputed that "a tax or other indebtedness due to the municipality" under section 3.1-10-5(b) of the Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2008)) renders a person ineligible to run for office. The issue is the application of the facts to the law. The hearing officer found that the city's letter "effectively rebuts any claim that the Candidate was in arrears on debts to the City of Chicago at the time she signed [t]he Statement of Candidacy and Nominating Papers," and did not address the issue of whether property taxes include taxes due to the city of Chicago. The Board of Elections, in applying section 3.1-10-5(b) of the Illinois Municipal Code to the facts, determined that "the only evidence of indebtedness presented was regarding an amount owed to the Cook County Assessor," and that there was no support for the conclusion that a debt owed to Cook County would bar a candidate from running in a municipal election in the city of Chicago. Therefore, as this case presents a mixed question of fact and law, we must decide whether the Board's decision is clearly erroneous.

Earls contends that any tax debt resulting from the unauthorized homeowner's exemptions

legally does not constitute arrears in taxes owed to the city of Chicago. She observes that it was the Cook County assessor's office that sent the letter that addressed the issues pertaining to the unauthorized homeowner's exemptions taken by Earls and her husband. The letter, in turn, directed them to make their payment out to the Cook County treasurer's office. Earls argues that the city of Chicago would not have standing to enforce the judgment, and accordingly, there was no "indebtedness due" to the city of Chicago. Earls also relies heavily on the letter she received from the city stating that the city's search of its records indicated she did not owe a debt to the city. Because she was not indebted to the City of Chicago, Earls argues that section 3.1-10-5 of the Municipal Code would not bar her from running for alderman.

Section 3.1-10-5(b) of the Illinois Municipal Code provides the following:

"A person is not eligible for an elective municipal office if that person is in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." 65 ILCS 5/3.1-10-5(b) (West 2008).

Based on this provision, a prospective candidate who owes a debt to a municipality at the time her nomination papers are filed is not eligible to run for or hold municipal office. *Cinkus*, 228 Ill. 2d at 220-22. More specifically, a tax indebtedness to a city would preclude a taxpayer from candidacy. *Grabavoy v. Wilson*, 87 Ill. App. 2d 193, 201 (1967).

The plain language of our statutory enactments is clear that, though collected by the Cook County collector, the money levied by the city as property taxes is due to the city. The Illinois Constitution of 1970 grants counties and municipalities the authority to levy or impose taxes. Ill.

Const. 1970, art. VII, §7. A county which has an elected chief executive officer and any municipality which has a population of more than 25,000 are home rule units, and a home rule unit may exercise any power and perform any function pertaining to its government and affairs, including the power to tax. Ill. Const. 1970, art. VII, §6(a). A number of statutes authorize various taxing districts, such as municipalities, counties, townships and school districts, to levy taxes. *Chicagoland Chamber of Commerce v. Pappas*, 378 Ill. App. 3d 334, 337-38 (2007). The Illinois Municipal Code provides that "[t]he corporate authorities may levy and collect taxes for corporate purposes." 65 ILCS 5/8-3-1 (West 2008).

Our Constitution also provides that county officers may act as treasurers of units of local government. "County officers shall have those duties, powers and functions provided by law and those provided by county ordinance." Ill. Const. 1970, art. VII, §4(d). Specifically, "[t]he county treasurer or the person designated to perform his functions may act as treasurer of any unit of local government and any school district in his county when requested by any such unit or school district and shall so act when required to do so by law." Ill. Const. 1970, art. VII, §4(e). Thus, both counties and cities may levy taxes, and cities may request that the county act as treasurer.

Under the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2008)), the Cook County treasurer collects taxes through property taxes. The county is charged with the duty of collecting property taxes including any interest resulting from delinquent taxes. 35 ILCS 200/21-15 (West 2008); *Village of Oak Lawn v. Rosewell*, 128 Ill. App. 3d 639, 645 (1984). The Property Tax Code provides that the treasurers of all counties are *ex officio* county collectors of their respective counties. 35 ILCS 200/19-35 (West 2008). Thus, the Cook County treasurer is an *ex officio*

county collector. The main duty and authority of the county collector is to collect taxes in accordance with the provisions of the Property Tax Code, which includes preparing the tax bill and mailing the tax bill to the property owner. 35 ILCS 200/20-5, 20-85 (West 2008). The collector has the power and the duty to collect any tax due and unpaid, and this duty continues through his or her successors until the tax is paid. 35 ILCS 200/20-95 (West 2008).

The property taxes collected by the Cook County treasurer include taxes on behalf of the city of Chicago. The Property Tax Code requires that all taxing bodies must certify annually to the county clerk the amount of taxes the taxing body seeks to raise. 35 ILCS 200/18-15 (West 2008). The filing of this certificate of the levy of taxes by a municipality is jurisdictional since it is what authorizes the county clerk to extend taxes for that taxing body. *People ex rel. Dooley v. New York, Chicago & St. Louis R.R. Co.*, 368 Ill. 536, 541 (1938).

Municipalities levy taxes in the following manner: On or before the last Tuesday in December in each year, the city ascertains the total amount of appropriations legally made or budgeted for city purposes to be provided for by the property tax levy of that year. 65 ILCS 5/8-3-1 (West 2008). Then, by an ordinance specifying in detail the purposes for which the appropriations have been made and the amount assignable for each purpose, the city levies upon all property subject to taxation within the city as that property is assessed and equalized for state and county purposes for the current year. 65 ILCS 5/8-3-1 (West 2008). A certified copy of the city's ordinance for the property tax levy is then filed with the county clerk. 65 ILCS 5/8-3-1 (West 2008). The clerk then ascertains the rate percent necessary to produce the total amount levied by the city upon the value of property subject to taxation within the city. 65 ILCS 5/8-3-1

11

1-11-0361

(West 2008).

The Chicago property tax limitation ordinance of the Chicago Municipal Code (Chicago Municipal Code §3-92-010 *et seq.* (added Mar. 8, 1993)) provides that the city's aggregate tax levy is:

> "the annual levy of property taxes by the city for all purposes, with the exception of: (i) amounts levied for the specific purposes of special service areas; and (ii) those specific amounts levied for the years 2002, 2003 and 2005 to 2030, inclusive, for the benefit of the Chicago school reform board of trustees of the board of education of the city of Chicago *** ; and (iii) for the purpose of determining the aggregate levies for the year 2008 and subsequent years, amounts levied for public library purposes which are separately stated on tax bills under Section 20-15 of the Property Tax Code 35 ILCS 200/20-15 plus adjustment for new property." Chicago Municipal Code §3-92-020(b) (added Mar. 8, 1993).

The Property Tax Code requires that there must be, printed on each property tax bill, "a statement itemizing the rate at which taxes have been extended for each of the taxing districts in the county in whose district the property is located." 35 ILCS 200/20-15(a) (West 2008). The Illinois Municipal Code also requires that the county clerk extend the city's tax in a separate column upon the books of the collector. 65 ILCS 5/8-3-1 (West 2008).

The money levied by the city as taxes on property which is collected by the Cook County treasurer is specifically designated as a separate class of funds, which is due and payable only to the city. Money due to the county is an entirely separate class of funds. Section 3-11003 of the

12

Counties Code (55 ILCS 5/1-1001 *et seq.* (West 2008)) sets out the classification of all moneys collected by the county as follows:

> "Class A. All taxes and special assessments received by the county treasurer in his capacity as ex officio county collector or ex officio town collector, and held by him pending distribution to the several governments or authorities entitled to receive the same, shall be known as 'Class A' funds.

> * * *

> Class C. All moneys belonging to the county in its corporate capacity shall be known as 'Class C' funds." 55 ILCS 5/3-11003 (West 2008).

Thus, city funds are "Class A" funds, and county funds are "Class C" funds. The Counties Code further provides that "Class A" funds "shall be withdrawn only upon checks or drafts signed by the County Treasurer and *payable to* the order of the State Treasurer *or the other proper authorities or persons entitled by law to receive the same.*" (Emphasis added.) 55 ILCS 5/3-11008 (West 2008). The Property Tax Code requires that in counties with 3 million or more inhabitants, the county collector must, on June 1 and the first day of every month thereafter, pay over the collected taxes to the local taxing bodies. 35 ILCS 200/20-140 (West 2008). The county collector must deposit all amounts of the tax proceeds of any taxing district directly into a designated escrow account established by the district. 35 ILCS 200/20-90 (West 2008). City taxes are therefore payable and due only to the city.

The county collector is subject to liability if the taxes due to the city are not properly paid. The Property Tax Code requires county collectors to file a bond, in addition to the bond as

county treasurer, and in counties of 3 million or more inhabitants, the amount of the bond must be no less than $1.5 million. 35 ILCS 200/19-40 (West 2008). Contrary to Earls' assertion, the city does have standing to enforce payment of its property taxes. The Property Tax Code authorizes taxing districts to prosecute a suit against any collector receiving funds for their use by suit on the bond in the name of the People of the State of Illinois for failure of the collector to make the payments required. 35 ILCS 200/20-155 (West 2008). The county collector is also liable to removal from office for failure to account for and pay over taxes to local taxing bodies as is required in the Property Tax Code. 35 ILCS 200/20-160 (West 2008). Thus, the county must pay the city property taxes to the city.

We return to the language of section 3.1-10-5 of the Illinois Municipal Code, which provides that a person is not eligible to run for municipal office if he or she is "in arrears in the payment of a *tax* or other indebtedness *due to the municipality*." (Emphasis added.) 65 ILCS 5/3.1-10-5 (West 2008). Black's Law Dictionary defines "due" as "[o]wing or payable." Black's Law Dictionary 574 (9th ed. 2009). Regardless of the letter generated by the city regarding other types of city debts, given the plain language of our statutory enactments, there is no question the amounts levied by the city of Chicago through property taxes are owing and payable to the city.

Earls' argument ignores the plain language of the relevant statutory provisions and fails to accord with common sense, given that the property tax bills themselves show the delineated amounts which were due to the city. See *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 282 (2009). Copies of the tax bills are in the common law record and clearly show the

14

required line-item amounts to various taxing agencies and entities. Earls' property tax bills clearly delineated the taxing districts where the proceeds of their tax assessment were to be directed. The bills contain an itemization of the sums that would be payable to various taxing authorities, including the city of Chicago.

The fact that Earls received a letter from the city indicating that the city's search of its own records revealed no debt of the types listed is not dispositive, as city property taxes are collected through the county collector. Although the county issues the bill and collects the money, the county is not the entity to which the city tax debt is owed. As the tax bills clearly show, property taxes, in part, are owed to the city of Chicago. And, in fact, it is clear that neither the county nor the county treasurer can keep all the money the county collects.

Earls argues that the issue in this case "would be complicated because the taxes are paid to the Cook County Treasurer and not the City of Chicago" and that, therefore, section 3.1-10-5(b) "would not apply to this case." However, regardless of whether the taxation system is complex, the fact remains that the city property taxes appropriated for city purposes, though collected by the county treasurer, is still due to the city. Using a rough analogy in layman's terms, the role of the Cook County treasurer in collecting and paying money owed to the city in our property taxation system is akin to a debt being collected by a collection agency, where the debt is then ultimately paid to the proper creditor.

Also, Earls argues that she did not know she was in arrears until she received notice in the letter from the Cook County assessor's office dated December 6, 2010. However, the evidence established that Earls was on the deeds and mortgages to the properties for which the

homeowner's exemptions were claimed, that she was the one who paid the property tax bills, and that she knew she lived at only the 37 N. Long residence.

Moreover, knowledge of indebtedness after filing nominating papers does not vitiate the prohibition of section 3.1-10-5(b) of the Illinois Municipal Code. In *Cinkus*, the candidate running for village trustee received notice of his debt to the village after he filed his nominating papers, by way of objection. *Cinkus*, 228 Ill. 2d at 204. Our supreme court determined that the indebtedness resulted in the candidate's ineligibility to run for office, pursuant to section 3.1-10-5(b). *Cinkus*, 228 Ill. 2d at 222. Similarly here, regardless of when Earls received notice of her arrearages, she was in arrears on her taxes to the city at the time she filed her nominating papers.

CONCLUSION

We hold that a portion of property taxes is due to the city of Chicago; therefore, arrearages on property taxes are also arrearages on taxes to the city, and a person in arrears in property taxes is not eligible to run for elective municipal office under section 3.1-10-5(b) of the Illinois Municipal Code. Therefore, the Electoral Board's decision was clearly erroneous. Earls is not eligible to run for elective municipal office because she was in arrears in the payment of her property taxes due to the city of Chicago. We reverse the judgment confirming the Board's decision, set aside the Board's decision, and, pursuant to Supreme Court Rule 366(a)(5) (Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994)), order that Earls' name be excluded (or, if necessary, removed) from the ballot for the February 22, 2011, municipal elections.

We further order that if, because of the limited time available before election day, February 22, 2011, the Board of Elections of the City of Chicago is not physically able to remove candidate

16

1-11-0361

Earls' name from ballots to be voted upon, that every person taking a ballot in the 28th Ward of the city of Chicago be given a written notice, to be initialed by the voter and a judge of elections, that candidate Earls has been found disqualified to run for alderman of the 28th Ward, that she is no longer a candidate, and that votes cast for her will not be counted.

We further order that any votes cast for candidate Earls on absentee ballots or early voting ballots not be counted.

Reversed.

1-11-0361