# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Watson v. Electoral Board of the Village of Bradley*, 2013 IL App (3d) 130142

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL "MIKE" WATSON, Petitioner-Appellant, v. THE ELECTORAL BOARD OF THE VILLAGE OF BRADLEY, and MICHAEL LaGESSE, ROBERT REDMOND and GERALD BALTHAZOR, Members, and MICHAEL SMITH, Objector, Respondents-Appellees. |
| District & No. | Third District<br>Docket No. 3-13-0142 |
| Rule 23 Order filed<br>Motion to publish allowed<br>Opinion filed | March 27, 2013<br><br>May 24, 2013<br>May 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent electoral board's decision to remove petitioner's name from the ballot as a candidate for village president was reversed, where the board erred in imputing to petitioner an alleged debt for a license fee owed by a corporation petitioner served as president and in finding that petitioner did not meet the residency requirement of the Illinois Municipal Code, since a corporation is separate and distinct from its directors and officers, and the objector clearly did not meet his burden of establishing that petitioner failed to satisfy the residency requirement. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 13-MR-80; the Hon. James B. Kinzer, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Jennifer J. Sackett Pohlenz, of Clark Hill PC, of Chicago, for appellant.

Paul L. Stephanides, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Mokena, and M. Neal Smith, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee Electoral Board of the Village of Bradley.

James R. Rowe, of Law Firm of Rowe & Associates, of Kankakee, for appellee Michael Smith.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.

Presiding Justice Wright and Justice McDade concurred in the judgment and opinion.

## OPINION

¶ 1    Petitioner, Michael "Mike" Watson, filed a statement of candidacy and corresponding petitions for nomination (nominating papers) seeking the office of village president of the Village of Bradley, Illinois. Thereafter, Michael Smith wrote a letter to the village clerk "objecting to the nominating petition of Michael Watson." The Electoral Board of the Village of Bradley (Electoral Board) conducted a hearing on Smith's objections, after which it struck the candidate's name from the official ballot for the consolidated election to be held on April 9, 2013. The candidate sought judicial review of that decision. On February 25, 2013, the circuit court of Kankakee County confirmed the findings and holdings of the Electoral Board. This appeal followed. We reverse.

¶ 2                                  BACKGROUND

¶ 3    On December 20, 2013, Watson filed his statement of candidacy seeking the office of the village president for the Village of Bradley. Watson also filed the necessary petitions for nomination containing the adequate number of voters' signatures in support of his candidacy. Thereafter, on January 2, 2013, Michael W. Smith of 1177 George Lane, Bourbonnais, Illinois, 60914, wrote a letter to Michael LaGesse, the village clerk for the Village of Bradley. The letter voices Smith's "objection to the nominating petition of Michael Watson." The letter indicates that Smith is a resident of the Village of Bradley and characterizes the "nature" of Smith's objection being "that Michael Watson is in arrears in the payment of a tax or other indebtedness due the Village of Bradley" in violation of section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2010)). Smith's letter does not

identify exactly what debt is owed by Watson to the village, how long Watson has been in arrears, or in what amount Watson is in arrears to the village.

¶ 4    The letter also alleges Watson "has not resided in the Village of Bradley for at least one year next preceding the April 9, 2013" election. This, Smith claims, disqualifies Watson from seeking office pursuant to section 3.1-10-5(a) of the Illinois Municipal Code (65 ILCS 5/1.1-10-5(a) (West 2010)).

¶ 5    The Electoral Board personally served Watson with notice of the objection and scheduled hearing at his residence of 296 South Quincy, Bradley, Illinois, 60915.

¶ 6    The Electoral Board, consisting of Robert Redmond, Gerald Balthazor and Michael LaGesse, convened on January 14, January 25, and January 30 of 2013 for the purpose of taking evidence and hearing arguments in this matter. During the hearings, the objector called candidate Watson to testify. Watson testified that he is the president of United Disposal of Bradley, Inc. (United Disposal), and has been since 1984. He identified a document United Disposal filed with the Illinois Secretary of the State. Watson noted he signed the document under penalty of perjury.

¶ 7    Line five of the document shows Watson is the president of United Disposal. It further has a typewritten address of 6290 South 1000 East Road, Chebanse, Illinois, attributed to Watson. Watson indicated he signed the document sometime in May of 2012. Two lines below line five on the document, however, Watson's name appears again, only this time the address attributed to him is 296 South Quincy, Bradley, Illinois, 60915. The Bradley address appears on the document in handwriting. The document also indicates one officer of United Disposal, Melvin Watson, lives at 272 South Quincy, Bradley, Illinois, 60915.

¶ 8    Watson noted this document was not prepared in his office but, instead, by United Disposal's attorneys. As he began signing it, he realized the address had not been changed so he instructed his office clerk to make the appropriate changes.

¶ 9    Watson also discussed a letter admitted into evidence dated April 4, 2012. The document states that Watson would resign as village president of Sammons Point effective April 5, 2012, as he has "decided to move back to Bradley." Watson testified that on April 6, 2012, he moved to 296 South Quincy, Bradley, Illinois.

¶ 10    Watson produced his driver's license at the hearing. The State of Illinois issued the license on April 6, 2012, which indicates that Watson's residence is 296 South Quincy Avenue, Bradley, Illinois. He also produced a copy of his voter registration card. The card indicates his address is 296 South Quincy Avenue, P.O. Box 179, Bradley, Illinois. Also admitted into evidence was a certified copy of Watson's request to change his voter registration, indicating that on April 6, 2012, he requested the Kankakee County clerk to change his address for voter registration purposes to 296 South Quincy Avenue, P.O. Box 179, Bradley, Illinois.

¶ 11    Watson also is the president of Michael Contracting, Inc. He filed an annual report in September of 2012 for that company, which indicated his address is 272 South Quincy Avenue, Bradley, Illinois. Watson testified that this is an old address and he did not live there in 2012.

¶ 12    When filing his nominating papers for candidacy, Watson listed his address as 296 South

Quincy Avenue, Bradley, Illinois.

¶ 13     The objector also called Kimberly Dickens to testify. Ms. Dickens is the village administrator for the Village of Bradley. She discussed documents prepared in relation to a Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2010)) request. One document indicates that in 2012, United Disposal had a business and scavenger license issued by the village. In 2011, United Disposal only had a scavenger license. The documents further indicate that from 2007 through 2010 "there was no record of payment for scavenger license or business license."

¶ 14     When asked if there are fees associated with those licenses, Dickens stated, "Not necessarily the business license, but, yes, for the scavenger license." She acknowledged that United Disposal paid fees associated with a scavenger license in 2011 and 2012.

¶ 15     Over Watson's objection, the objector was allowed to ask Dickens if failure to "have a business or scavenger license" of "a corporation operating and doing business in the Village of Bradley" equates to "a debt owed to the Village." Dickens stated it did equate to a debt owed. Also over objection, Dickens stated that in 2012 "United Disposal would have been in arrears of a debt owed to the Village of Bradley."

¶ 16     Dickens clarified that at all times her testimony concerned "the corporate entity" being United Disposal. She also acknowledged that she did not know the legal definition of the term "debt" and that she was unaware if the term is defined by village ordinance.

¶ 17     Dickens concluded, noting that the village does not issue licenses to those "doing business within the Village when they owe monies to the Village." At the time of Dickens' testimony, United Disposal had a current business and scavenger license from the Village of Bradley. She further acknowledged that she only looked in the "ledger" to see if United Disposal actually paid for a license and did not check to see if the village deducted the licensing fees from monies it owed United Disposal. Since she "did not inquire into that," she had no opinion as to whether or not that occurred.

¶ 18     On January 30, 2013, the Electoral Board issued its "Findings and Decision." This document indicates that Watson made an oral motion to disqualify members of the Board based on various theories of bias. The Electoral Board denied his motion. The Electoral Board also denied Watson's motion *in limine* seeking to bar any discussion of alleged indebtedness of United Disposal.

¶ 19     The Electoral Board found that "the Candidate" owes business and scavenger license fees to the village and that there "is no evidence that United Disposal paid license fees for a scavenger or a business license in the years 2007-2010." In concluding that Watson is personally liable for alleged debts of United Disposal, the Electoral Board quoted section 12-28 of the Village of Bradley Code of Ordinances. That section states:

> "The agents or other representatives of nonresidents who are doing business in the village shall be personally responsible for the compliance, of the principals and of the businesses they represent, with this chapter." Village of Bradley Code of Ordinances § 12-28 (eff. Apr. 9, 2012).

While the Electoral Board acknowledged that corporate debts are generally not imputed to individuals, it opined that pursuant to *Polivka v. Worth Dairy, Inc.*, 26 Ill. App. 3d 961

(1974), individuals "may be liable for such debts when they are made expressly liable by law."

¶ 20    Therefore, the Electoral Board found that Watson was ineligible to serve as an elective municipal officer as he was in arrears in the payment of an indebtedness to the village. Specifically, the Electoral Board found that Watson "is in arrears to the Village for a failure to pay the business and scavenger license fees for the years 2008-2010." As such, the Electoral Board sustained Smith's objections to Watson's nominating papers and ordered that "the name of Michael 'Mike' Watson shall not be printed on the official ballot for the Consolidated Election to be held on April 9, 2013."

¶ 21    The Electoral Board also found Watson failed to meet the applicable residency requirements necessary to serve as a village officer. It noted Watson's statement of candidacy indicates he resides at 296 South Quincy, Bradley, Illinois. It continued that to establish residency, one must show both physical presence and an intent to remain in that place as a permanent home. The Electoral Board found that Watson's driver's license, voter registration information and his resignation letter from Sammons Point were "self serving" and did "not provide evidence that the Candidate had a physical presence at 296 South Quincy during the required time period or that he intended to make that address his permanent home during that time."

¶ 22    The Electoral Board went on to find that the filing with the Secretary of State, which showed conflicting addresses in Chebanse and Bradley attributable to Watson, one being typed and the other being handwritten, was "a more reliable indication of the Candidate's actual residence." Finally, the Electoral Board found that Watson's testimony "did not establish that he had a physical presence at 296 South Quincy, nor that he intended to remain there as his permanent residence." As such, it sustained Smith's objection to Watson's nominating papers on the basis of residence and, again, ruled that Watson's name shall not be printed on the official ballot.

¶ 23    Watson appealed the Electoral Board's decision to the circuit court of Kankakee County, which confirmed the decision. This appeal followed.

¶ 24                                    ANALYSIS

¶ 25    Watson raises two issues on appeal, providing numerous theories within those two issues as to why the Electoral Board erred in its findings. Initially, Watson argues that the Electoral Board erred in finding he failed to meet the applicable residency requirement. He argues this is so as: the Electoral Board incorrectly interpreted the law regarding handwritten changes to a document when compared to typewritten information on the same document; the Electoral Board improperly placed too much weight on the annual corporate filings; the Electoral Board incorrectly ignored his testimony and documentation regarding residency; the Electoral Board applied an improper burden of proof; and the Electoral Board erred when finding he failed to establish residency.

¶ 26    The second issue raised by Watson, again with numerous arguments contained therein, is that the Electoral Board erred when determining he is personally liable for alleged corporate debts of United Disposal. Watson claims, *inter alia*, that: a licensing fee is not an

arrearage pursuant to section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2010)); the village is barred by the statute of limitations from collecting any potential fees that were not paid and, therefore, they cannot constitute an arrearage; arguments regarding corporate debts equated to an impermissible amendment of the letter stating Smith's objection; and the Electoral Board erred in attributing any alleged debt of United Disposal to Watson individually.

¶ 27　This court views an electoral board as an administrative agency. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). As such, we employ traditional standards of review associated with reviews from administrative agencies. *Id.* at 211. Those standards are threefold: (1) an agency's decision on a question of law is not binding on a reviewing court and, as such, we review questions of law *de novo*; (2) we show deference to an agency's factual findings, reversing them only if they are against the manifest weight of the evidence; and (3) we review mixed questions of law and fact to determine whether they are clearly erroneous. *Id.* at 210-12.

¶ 28　An administrative agency's factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998). "Mixed questions of fact and law are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." (Internal quotation marks omitted.) *Cinkus*, 228 Ill. 2d at 211. An agency's decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

¶ 29　Candidate Watson sought review of the Electoral Board's decision pursuant to section 10-10.1 of the Illinois Election Code (10 ILCS 5/10-10.1 (West 2010)). Where "a circuit court reviews an electoral board's decision pursuant to section 10-10.1 of the Election Code, we review the decision of the board, not the court." *Cinkus*, 228 Ill. 2d at 212.

¶ 30　　　　　　　　　　　　A. Licensing Fee Arrearage

¶ 31　To arrive at its conclusion that alleged debts of United Disposal are sufficient to keep the candidate off the ballot, the Electoral Board walked the following path of analysis. Initially, it noted that there "is no evidence that United Disposal paid license fees for a scavenger or a business license in the years 2007-2010." It then quoted section 12-28 from the Village of Bradley Code of Ordinances, which states, "The agents or other representatives of nonresidents who are doing business in the village shall be personally responsible for the compliance, of the principals and of the businesses they represent, with this chapter." Village of Bradley Code of Ordinances § 12-28 (eff. Apr. 9, 2012).

¶ 32　The Electoral Board continued, stating, "While it is generally the law that corporate debts are not imputed to individuals, officers of corporations may be liable for such debts when they are made expressly liable by law." To support this proposition, the Electoral Board cited to *Polivka v. Worth Dairy, Inc.*, 26 Ill. App. 3d 961 (1974). The Electoral Board found section 12-28 rendered the candidate personally liable for any debt of United Disposal.

-6-

¶ 33 Noting section 3.1-10-5(b) of the Illinois Municipal Code renders a person ineligible for office "if that person is in arrears in the payment of a tax or other indebtedness due to the municipality" (65 ILCS 5/3.1-10-5(b) (West 2010)), the Electoral Board concluded that Watson's "failure to pay the business and scavenger license fees for the years 2008-2010" rendered him ineligible to be a candidate for office. We find the Electoral Board's analysis lacking in many respects.

¶ 34 We hold, as a matter of law, that the Electoral Board erred when imputing the alleged debt of United Disposal onto the candidate. "A corporation is a legal entity separate and distinct from its shareholders, directors, and officers." *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 172 (1994).

¶ 35 Neither the Electoral Board nor the objector has identified a single case holding that section 3.1-10-5(b) bars the candidacy of an individual due to the debt of a corporation. Our research has similarly failed to identify a single reported case in which a court has imputed the debt of a corporation to a candidate then disqualified the candidate under section 3.1-10-5(b). See *Jackson v. Board of Election Commissioners*, 407 Ill. App. 3d 837 (2011); *Grabavoy v. Wilson*, 87 Ill. App. 2d 193 (1967); *People v. Hamilton*, 24 Ill. App. 609 (1887); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200 (2008); *Stinson v. Chicago Board of Election Commissioners*, 407 Ill. App. 3d 874 (2011).

¶ 36 Moreover, we disagree with the Electoral Board's analysis that the holding of *Polivka* in conjunction with section 12-28 of the village ordinances imputed any alleged debt of United Disposal to Watson. The exact passage referred to by the Electoral Board from *Polivka* states, "It is the general rule that directors or other officers of corporations are not liable for *debts contracted in the name of and on behalf of the corporation* and which are binding upon it unless they are expressly made liable by statute, or unless they also contract in their own behalf." (Emphasis added.) *Polivka*, 26 Ill. App. 3d at 966. The question addressed in *Polivka* was whether the defendant, who was the president of a corporation, contracted in his own behalf or on behalf of the corporation. *Id. Polivka*'s discussion of principles associated with whether an individual contracts in his individual capacity or in his capacity as an officer of a corporation are irrelevant to the case at bar.

¶ 37 Furthermore, as noted above, section 12-28 only applies to "representatives of nonresidents who are doing business in the village." Village of Bradley Code of Ordinances § 12-28 (eff. Apr. 9, 2012). The objector's own "exhibit number 1" indicates that the "principal address of corporation" for United Disposal is "1000 Liberty, Bradley, IL 60915." United Disposal is simply not a "nonresident" of the Village of Bradley, rendering section 12-28 inapplicable to United Disposal or its representatives. We find section 3.1-10-5(b) of the Illinois Municipal Code does not disqualify Watson from running for the office of village president due to alleged indebtedness of United Disposal.

¶ 38 We use the phrase "alleged indebtedness" as we must note that the evidence of indebtedness adduced below at the administrative proceeding is less than overwhelming. The village administrator testified that in "2010, '09, '08, and '07 there was no record of payment for a scavenger license or a business license" for United Disposal. She continued that while there are fees associated with a scavenger license, such fees are "not necessarily [associated

with] the business license." The administrator noted that United Disposal obtained a scavenger license for 2012 and further stated that the village does not "issue licenses to anyone doing business within the village when they owe monies to the village."

¶ 39    The administrator further acknowledged the searches of the village records she conducted only identified whether or not the village received a direct payment from United Disposal for a scavenger or business license in any given year. She did not search the village's ledger regarding payments owed and/or made to United Disposal. She could not comment on whether or not the village simply deducted the scavenger or business license fees from monies owed United Disposal from 2007 through 2010. The objector's attorney specifically asked whether she had "any evidence" that such deductions took place to which she responded, "I did not inquire into that so I would not have any knowledge."

¶ 40                                        B. Residency

¶ 41    "[T]he burden of proof in a proceeding to contest nominating petitions lies with the objector ***." *Hagen v. Stone*, 277 Ill. App. 3d 388, 390 (1995); *Carlasare v. Will County Officers Electoral Board*, 2012 IL App (3d) 120699. We review the Electoral Board's determination of residency requirement under the "clearly erroneous" standard. *Maksym v. Board of Election Commissioners*, 242 Ill. 2d 303, 326 (2011). Again, a "decision is 'clearly erroneous' only when the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Id.* at 327. Having carefully reviewed the Electoral Board's decision, we are left with the overwhelming, definite and firm conviction that a mistake has been committed. We hold the Electoral Board's decision, which found candidate Watson failed to meet the residency requirement enunciated in section 3.1-10-5(a) of the Illinois Municipal Code, is clearly erroneous. As such, we reverse that decision and finding. Section 3.1-10-5(a) states, "A person is not eligible for an elective municipal office unless that person is a qualified elector of the municipality and has resided in the municipality at least one year next preceding the election ***." 65 ILCS 5/3.1-10-5(a) (West 2010).

¶ 42    To establish residency, "the two required elements are: (1) physical presence, and (2) an intent to remain in that place as a permanent home." *Maksym*, 242 Ill. 2d at 326. While the objector called Watson to testify at the hearing on his petition, he asked no questions regarding Watson's intent to remain in Bradley as a permanent home. The sole evidentiary basis for the Electoral Board's decision is the United Disposal filing with the Secretary of State.

¶ 43    Although we are unable to reproduce a high resolution image of that document, one can see that it contains two addresses for candidate Watson: one typewritten indicating an address in Chebanse and the other handwritten indicating an address of 296 South Quincy, Bradley, Illinois, 60915. Again, this is the singular piece of evidence relied upon by the Electoral Board to determine that Watson failed to meet the residency requirement.

¶ 44    Conversely, Watson introduced into evidence a copy of his driver's license and voter registration material showing that he moved to Bradley on April 6, 2012. He further introduced a letter written to board members of Sammons Point explaining his intent "to return to live in [his] hometown." In addition to those documents, the record reflects that

when the Electoral Board needed to serve process on Watson, it did so at his residence in Bradley, Illinois.

Nevertheless, the Electoral Board found the corporate filing of United Disposal the most reliable indicator of Watson's residency, despite the fact that the document contradicts itself within its own four corners. As we are left with nothing but the firm and definite conviction

that the Electoral Board committed a mistake when finding that Watson failed to meet the applicable residency requirement, we reverse its decision striking Watson's name from the ballot for the consolidated election to be held on April 9, 2013. It was the objector's burden to establish that Watson did not meet residency requirements. The objector clearly did not carry this burden, which leads us to Watson's next challenge.

¶ 45                                    C. Burden of Proof

¶ 46    Noting that the Electoral Board found "the Candidate's testimony did not establish that he had a physical presence at 296 South Quincy, nor that he intended to remain there as his permanent residence," Watson claims the Electoral Board applied an incorrect burden of proof. That is, the Electoral Board shifted the burden of proof from the objector to the candidate. We agree. As noted above, "the burden of proof in a proceeding to contest nominating petitions lies with the objector." *Hagen v. Stone*, 277 Ill. App. 3d at 390; *Carlasare v. Will County Officers Electoral Board*, 2012 IL App (3d) 120699. The Electoral Board's language makes it clear that it placed the burden on the candidate. It was the objector's burden to prove that the candidate did not meet residency requirements, not the candidate's burden to prove that he did.

¶ 47                                    D. Additional Challenges

¶ 48    The candidate raises additional challenges to the Electoral Board's ruling, including: (1)

whether the Electoral Board improperly allowed an untimely amendment of the objector's petition; and (2) whether any potential uncollected fees are barred by the statute of limitations. The lack of specificity in the objector's letter to the village clerk is troublesome as is the fact that the Electoral Board allowed arguments concerning the corporate debts of United Disposal despite the fact that the letter objecting to Watson's candidacy fails to mention such debt. However, having reversed the decision of the Electoral Board on other grounds, we need not address these issues.

¶ 49                            CONCLUSION

¶ 50      For the foregoing reasons, the judgment of the circuit court which confirmed the decision of the Electoral Board of the Village of Bradley is reversed.

¶ 51      Reversed.