2024 IL App (1st) 240224

Opinion filed February 20, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| CAROLYN J. GALLAGHER and LEONARD MURRAY, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois, |
| Petitioners-Appellees, | ) ) | Appeal No. 1-24-0224 |
| | ) | Circuit No. 24-COEL-2 |
| v. | ) ) | Honorable |
| | ) | Marcia O'Brien Conway, |
| THE COOK COUNTY OFFICERS ELECTORAL BOARD; KAREN A. YARBROUGH, in Her Official Capacity as Chair of the Cook County Officers Electoral Board and as the Cook County Clerk; IRIS MARTINEZ, Member of the Cook County Officers Electoral Board; KIM FOXX, Member of the Cook County Officers Electoral Board; ELIZABETH WATSON, Objector; JOHN J. LYDON, Objector; and THE BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge, Presiding. |
| Respondents | ) ) | |
| (Elizabeth Watson and John J. Lydon, Respondents-Appellants). | ) ) | |

_____

JUSTICE ALBRECHT delivered the judgment of the court, with opinion.
Justice Brennan concurred in the judgment and opinion.
Presiding Justice McDade specially concurred, with opinion.

**OPINION**

¶ 1    In this elections appeal, objectors Elizabeth Watson and John J. Lydon appeal the circuit court's decision that candidates Carolyn Gallagher's and Leonard Murray's circulator affidavits complied with statutory requirements. For the reasons that follow, we affirm.

¶ 2    I. BACKGROUND

¶ 3    On November 27, 2023, the candidates filed joint nomination papers to be included on the March 19, 2024, primary election ballot as candidates for nomination of the Democratic Party for election to the office of Appellate Court Judge in the First District of the State of Illinois. The candidates' nomination papers included circulator affidavits certifying that the petition sheets were signed "during the period of September 5, 2023 through December 4, 2023." December 4, 2023, was the last day a candidate could file nomination papers, and September 5, 2023, was 90 days preceding this last day for filing.

¶ 4    On December 11, 2023, objectors Elizabeth Watson and John J. Lydon filed an "Objectors' Petition" against the candidates' nomination papers, raising circulator-based objections. Specifically, objectors alleged that the circulator affidavits utilized by the candidates, and thus all the nomination papers associated with those affidavits, did not comply with the requirements of section 7-10 of the Election Code and were therefore invalid. 10 ILCS 5/7-10 (West 2022). The purported noncompliance under this section of the Election Code was that the language with the date range for when the nomination papers were signed deviated from the language of the statute, which indicated the circulators must certify that "none of the signatures on the sheets were signed more than 90 days preceding the last day for the filing of the petition." *Id.* The candidates countered that the language used complied with the statute.

¶ 5 The parties first presented their arguments to a hearing officer, who issued a recommendation to the Cook County Officers Electoral Board (Board) that the language in the circulator affidavit substantially complied with the statute and the candidate should therefore remain on the ballot. The Board's written decision on January 10, 2024, rejected the hearing officer's recommendation. Instead of applying a substantial compliance standard, the Board determined a strict compliance standard was appropriate and found that the candidates' circulator affidavits were not in strict compliance with the requirements of the Election Code. The Board ordered the candidates' names removed from the primary election ballot.

¶ 6 The candidates then filed a petition for judicial review in the circuit court. The circuit court reversed the Board and ordered the candidates' names to appear on the primary election ballot. The court found that section 7-10 of the Election Code required substantial compliance and, because the substance of the circulator affidavits met the substantive requirement of the Election Code, the candidates had not violated any mandatory provisions of the Election Code.

¶ 7 The objectors now appeal, and on February 1, 2024, the Illinois Supreme Court directed that the appeal be heard by the Appellate Court, Third District.

¶ 8 II. ANALYSIS

¶ 9 On appeal, the objectors argue that the candidates' nomination papers do not comply with the statute. They argue that the statute should be strictly construed and, because the candidates' circulator affidavits certify that voters signed between the period of September 5 to December 4, 2023, instead of certifying that the papers were signed no more than 90 days prior to the last day of filing, the nomination papers must be stricken and the candidates must be removed from the ballot. The candidates argue that the certification complies with the statute because the phrasing

3

used meets the substantive requirement that the circulators certify no signatures were obtained more than 90 days before the last day of filing.

¶ 10     Where a circuit court has reviewed an electoral board's decision, we review the board's decision, not that of the circuit court. *Burns v. Municipal Officers Electoral Board of Elk Grove Village*, 2020 IL 125714, ¶ 10. The Board's findings of fact are deemed *prima facie* true and correct and will not be overturned unless they are against the manifest weight of the evidence; however, its conclusions of law are reviewed *de novo. Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶ 11. Deference must be given to the agency's interpretation of a statute, even on *de novo* review. See *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 31. However, we remain cognizant that our supreme court has admonished that we should "tread cautiously when construing statutory language which restrict[s] the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997). The issue before us is whether the candidates substantially complied with the requirements of the Election Code, which is a question of law we review *de novo. Zurek v. Cook County Officers Electoral Board*, 2014 IL App (1st) 140446, ¶ 11 ("When the dispute concerns whether a candidate's nominating papers complied substantially with the Election Code, then the question is purely one of law and our standard of review is *de novo*."). Objectors argue that the issue involves a mixed question of law and fact, where we review the Board's decision under a clearly erroneous standard. See *Watson v. Electoral Board of Bradley*, 2013 IL App (3d) 130142, ¶ 28. In any event, even if this court applies the clearly erroneous standard, our analysis and conclusion remain the same.

¶ 11     Section 7-10 of the Election Code sets forth the form required for nomination petitions and provides that "no candidate for nomination *** shall be printed upon the primary ballot

4

unless a petition for nomination has been filed in his behalf as provided in this Article *in substantially the following form*." (Emphasis added.) 10 ILCS 5/7-10 (West 2022). It then requires that a circulator certify that the signatures obtained were signed in his or her presence, that the signatures are genuine and were gathered during a certain period, and that to the best of the circulator's knowledge the signer was a qualified voter for the particular party for which the nomination was sought. *Id.* Further, the circulator must also include in the affidavit a certification

> "(1) indicating the dates on which that sheet was circulated, or (2) indicating the first and last dates on which the sheet was circulated, or (3) for elections where the petition circulation is 90 days, certifying that none of the signatures on the sheet were signed more than 90 days preceding the last day for the filing of the petition, or (4) for the 2022 general primary election only, certify that the signatures on the sheet were signed during the period of January 13, 2022 through March 14, 2022 or certify that the signatures on the sheet were signed during the period of January 13, 2022 through the date on which this Statement was sworn or affirmed to." *Id.*

¶ 12         Here, the candidates' nomination papers contained a statement that the signatures were "signed *** during the period of September 5, 2023 through December 4, 2023." The objectors argue that this phrasing does not comply with any of the statutorily approved statements and instead appears to be a modification of the fourth possibility, which was only permitted during the 2022 election. The candidates argue the wording in the circulator affidavits substantively complied with the third option in the statute because the affidavits contained a date range that

5

unequivocally avers that the petitions were signed no "more than 90 days preceding the last day for the filing of the petition" as the statute requires. *Id.*

¶ 13    When reviewing the Election Code, the principles of statutory construction require us to give the language its " 'plain, ordinary and popularly understood meaning.' " *Samuelson*, 2012 IL App (1st) 120581, ¶ 28 (quoting *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003)). Moreover, we must view the provisions of a statutory enactment in their entirety. *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). Accordingly, we must interpret all of section 7-10 in light of other relevant provisions of the statute and must not interpret the clause at issue in isolation. *Id.* "Each word, clause, and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *Id.*

¶ 14    The affidavit and certification requirements are mandatory under the Election Code. *Brennan v. Kolman*, 335 Ill. App. 3d 716, 719 (2002). Though mandatory, section 7-10 otherwise requires that the nominating petition be "substantially" in the required form. 10 ILCS 5/7-10 (West 2022). Indeed, even setting aside this language, strict compliance is generally only required when the statutory requirements in the Election Code "contribute substantially to the integrity of the election process." *Craig v. Peterson*, 39 Ill. 2d 191, 196 (1968); see *Madden v. Schumann*, 105 Ill. App. 3d 900, 903 (1982) ("substantial compliance with the Election Code is acceptable when the invalidating charge concerns a technical violation"). While objectors rely on *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, to argue strict compliance is necessary, such compliance is required only when "the candidate failed to meet a threshold requirement completely."*Id.* ¶ 37. Substantial compliance is appropriate when, as here, "the candidate[s] met the basic requirements of the Election Code." *Id.* Of course, "substantial compliance is not operative to release a candidate from compliance with the

6

provisions intended by the legislature to guarantee a fair and honest election." *Madden*, 105 Ill. App. 3d at 903-04.

¶ 15 A straightforward reading of section 7-10 indicates that its requirements as to form for a nomination petition require only substantial, not strict, compliance. 10 ILCS 5/7-10 (West 2022) (providing that a candidate may not be printed on a ballot unless a "petition for nomination has been filed in his behalf as provided in this Article in substantially the following form"). That these requirements are mandatory does not otherwise bar the application of a substantial compliance standard. *Brennan*, 335 Ill. App. 3d at 720 ("substantial compliance can satisfy even a mandatory provision of the [Election] Code"). Simply put, the Board's determination that the failure to utilize the exact language found in section 7-10 for the timing of the circulation of petitions renders substantially compliant petitions noncompliant was incorrect.

¶ 16 Turning to whether there was substantial compliance here, section 7-10 of the Election Code provides that the circulator must certify that the nomination papers were signed no more than 90 days before papers were due to be filed. 10 ILCS 5/7-10 (West 2022). For the purposes of this election, 90 days prior to the last day a candidate may file nomination papers, which is the first day petitions may be signed, was September 5, 2023. Thus, as a matter of simple math, the candidates' circulator affidavits clearly aver that no signatures were obtained outside of the prescribed 90-day period. This affirmation entirely comports with the time frame required by section 7-10. Objectors otherwise argue that the certification is "untruthful" because it states that the voters signed the papers between September 5 and December 4, 2023, notwithstanding that the nominating petitions were filed on November 27, 2023. However, there is nothing untruthful about that statement. All signatures were indeed "signed *** during the period of September 5, 2023 through December 4, 2023," as November 27, 2023, falls within that range.

7

¶ 17    Objectors' reliance on *Zurek v. Peterson*, 2015 IL App (1st) 150508, is also unavailing. In *Zurek*, the nomination petition circulators' affidavits certified that "all of the signatures on this sheet were signed within the statutory time period for petition circulation." (Internal quotation marks omitted.) *Id.* ¶ 21. The court held that this conclusory statement was insufficient to comply with the requirement of the Election Code that each circulator provide a factual statement under oath attesting to the timing of circulation of each petition. *Id.* It further observed that, unless a circulator affidavit contains "a specific date, *a range of two specific dates*, or a window of no more than 90 days before the filing of the petition, then it would be impossible to effectively question the circulator about when he or she obtained the voters' signatures." (Emphasis added.) *Id.*; see *Simmons v. DuBose*, 142 Ill. App. 3d 1077, 1081 (1986) (no substantial compliance where circulator's affidavit did not include circulation dates notwithstanding that the special election arose within the 90-day circulation period). Here the candidates did exactly as the *Zurek* court suggested would be compliant—provide a correct "range of two specific dates."

¶ 18    We must not forget that the purpose of a circulator affidavit is to provide "a meaningful and realistic method of eliminating fraudulent signatures and protecting the integrity of the political process." *Sakonyi v. Lindsey*, 261 Ill. App. 3d 821, 826 (1994). The 90-day time frame of section 7-10 helps ensure the integrity of this process by requiring that the nomination papers be signed during a statutorily prescribed reasonable period before the election. See 10 ILCS 5/7-10 (West 2022). There is no evidence of fraud here. The wording used in these affidavits does not in any way cast doubt on the validity of the signatures, nor do the objectors suggest that any of the signatures were obtained outside of the required date range—a range that was otherwise correctly stated in the nomination petition. The goal of the circulator affidavit is to honor "the legislative intent to guarantee a fair and honest election." *Siegel v. Lake County Officers*

8

*Electoral Board*, 385 Ill. App. 3d 452, 461 (2008). Here, the phrasing of the circulator affidavit effectuates the legislative intent and is neither unfair nor dishonest. The record clearly indicates that the circulators' affidavit did not "impair the integrity of the electoral process." *Id.* Instead, language was used that clearly met the substantive requirement of the provision.

¶ 19 Cognizant of the importance of ballot access and concluding that the statements contained in the circulator affidavits relating to when the petitions were signed substantially comply with section 7-10's prescribed format, we affirm the circuit court's decision that reverses the Board's decision to remove the candidates' names from the ballot.

¶ 20                                    III. CONCLUSION

¶ 21 The judgment of the circuit court of Cook County is affirmed. The Board decision is therefore reversed.

¶ 22 Circuit court judgment affirmed.

¶ 23 Board decision reversed.

¶ 24 PRESIDING JUSTICE McDADE, specially concurring:

¶ 25 I agree with the majority's determination to affirm the judgment of the circuit court and to reverse the Board decision. I write separately to say that, for all of the reasons set out in the majority decision, I would find that the circulator statements contained within the petitions strictly, rather than merely substantially, comply with the certification requirements under section 7-10 of the Election Code.

¶ 26 As the majority explains, section 7-10 states that "no candidate for nomination *** shall be printed upon the primary ballot unless a petition for nomination has been filed in his behalf as provided in this Article in substantially the following form." 10 ILCS 5/7-10 (West 2022). This section then requires that each petition include a circulator statement that contains a certification

9

"(1) indicating the dates on which that sheet was circulated, or (2) indicating the first and last dates on which the sheet was circulated, or (3) for elections where the petition circulation is 90 days, certifying that none of the signatures on the sheet were signed more than 90 days preceding the last day for the filing of the petition, or (4) for the 2022 general primary election only, certify that the signatures on the sheet were signed during the period of January 13, 2022 through March 14, 2022 or certify that the signatures on the sheet were signed during the period of January 13, 2022 through the date on which this Statement was sworn or affirmed to." *Id.*

¶ 27　　Under the third of the above certification options, section 7-10 expressly requires only that circulator statements substantially show that no signatures were obtained outside of the 90 days preceding the last day for filing the petitions. There are no quotation marks surrounding this statutory language, nor are there any other indications that circulator statements must certify this language verbatim. Indeed, such a requirement would contradict the statute's plain language that petitions need only be in "substantially" the form presented in section 7-10.

¶ 28　　By stating that the petitions were signed "during the period of September 5, 2023 through December 4, 2023," the circulator statements in this case indicate in a clear and incontrovertible form that no signatures were gathered outside of the proper 90-day period, thus showing exactly what is required under the third certification option. This, in my opinion, constitutes strict, not substantial, compliance with the legislative mandate.

10

*Gallagher v. Cook County Officers Electoral Board*, 2024 IL App (1st) 240224

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-COEL-2; the Hon. Marcia O'Brien Conway, Judge, presiding. |
| **Attorneys for Appellant:** | Burton S. Odelson, Ross D. Secler, and Jayman A. Avery III, of Odelson, Murphey, Frazier & McGrath, Ltd., of Evergreen Park, and Micheal J. Kasper, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Ed Mullen, of Chicago, for Carolyn J. Gallagher and Leonard Murray. No brief filed for other appellees. |